# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE EDUCATION ASSOCIATION, et al.,** | ) | |
| | ) | **Case No. 3:23-CV-00751** |
| **Plaintiff,** | ) | |
| **vs.** | ) | **District Judge Aleta A. Trauger** |
| | ) | |
| **LIZZETTE GONZALEZ REYNOLDS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS……………………………………………………………………… ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................2

LEGAL STANDARD .....................................................................................................4

ARGUMENT .................................................................................................................5

I.   Teachers Lack Standing to Challenge the Act………………………………………5

    a.   The Individual Teachers have not been injured………………………………………6

    b.   At a minimum, Teachers lack standing to challenge each provision of the Act………8

II.  TEA's standing only goes as far as the Teachers' standing………………………..10

III. The Complaint Fails to State a Vagueness Claim………………………………….10

    A.   The Act is not facially void-for-vagueness…………………………………………11

    B.   The Act is not unconstitutionally vague as-applied…………………………………15

IV.  This Court Should Abstain and Allow State Courts to Interpret the Act……………. 18

V.   The Commissioner of Tennessee's Department of Education Must be Dismissed……...19

CONCLUSION ............................................................................................................20

CERTIFICATE OF SERVICE ....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................................ 1

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) (en banc) .............................................. 2

*Agema v. Allegan*,
  826 F.3d 326 (6th Cir. 2016) ................................................................ 5

*Am. BioCare Inc. v. Howard & Howard Att'ys*,
  702 F. App'x 416 (6th Cir. 2017) ......................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................... 4, 20

*Association of American Physicians & Surgeons v. FDA*,
  13 F.4th 531 (6th Cir. 2021) ............................................................... 10

*Bd. of Educ. v. Earls*,
  536 U.S. 822 (2002)............................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................... 4, 5

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)............................................................................... 5

*Brown v. Tidwell*,
  169 F.3d 330 (6th Cir. 1999) ............................................................... 18

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) ................................................................ 5

*Chapman v. United States*,
  500 U.S. 453 (1991)............................................................................. 11

*Clemons v. Couch*,
  3 F.4th 897 (6th Cir. 2021) ................................................................... 2

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021)..................................................................... 8, 19

i

*Counterman v. Colorado*,
   600 U.S. 66 (2023) .................................................................................................... 17

*Crawford v. Dep't of Treasury*,
   868 F.3d 438 (6th Cir. 2017) .................................................................................. 1, 6

*Davis v. Colerain Township*,
   51 F.4th 164 (6th Cir. 2022) ........................................................................................ 9

*Déjà Vu v. Union Twp.*,
   411 F.3d 777 (6th Cir. 2005) ..................................................................................... 15

*EMW Women's Surgical Ctr. v. Beshear*,
   920 F.3d 421 (6th Cir. 2019) ..................................................................................... 19

*Ex parte Young*,
   209 U.S. 123 (1908) ................................................................................................... 19

*FEC v. Cruz*,
   142 S. Ct. 1638 (2022) ................................................................................................. 6

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ................................................................................................... 10

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ................................................................................................... 17

*Gottfried v. Med. Plan. Servs., Inc.*,
   142 F.3d 326 (6th Cir. 1998) ..................................................................................... 18

*Grayned v. Rockford*,
   408 U.S. 104 (1972) ............................................................................................. 10, 18

*Harris Cnty. Comm'rs Ct. v. Moore*,
   420 U.S. 77 (1975) ..................................................................................................... 18

*Hill v. Colorado*,
   530 U.S 703, 1205 S. Ct. 2480 (2000) ....................................................................... 14

*Hughes v. Sanders*,
   469 F.3d 475 (6th Cir. 2006) ....................................................................................... 5

*Lake Carriers' Ass'n v. MacMullan*,
   406 U.S. 498 (1972) ................................................................................................... 18

ii

*Lujan v. Defenders of Wildlife*,
   504 U.S. 55, 112 S. Ct. 2130 (11992) (cleaned up) ................................................. 8

*Maynard v. Cartwright*,
   486 U.S. 356 (1988) .................................................................................................. 11

*McKay v. Federspiel*,
   823 F.3d 862 (6th Cir. 2016) .......................................................................... 6, 7, 8

*Midwest Media Prop. v. Symmes Twp.*,
   503 F.3d 456 (6th Cir. 2007) ..................................................................................... 9

*Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*,
   313 U.S. 236 (1941) .................................................................................................... 1

*Online Merchs. Guild v. Cameron*,
   995 F.3d 540 (6th Cir. 2021) ................................................................................. 6, 7

*Paramount Contractors & Devs. v. Los Angeles*,
   2007 WL 9662264 (C.D. Cal. July 23, 2007) ......................................................... 15

*Pineda v. Hamilton Cnty.*,
   977 F.3d 483 (6th Cir. 2020) ................................................................................... 20

*Posters 'N' Things, Ltd. v. United States*,
   511 U.S. 513 (1994) .................................................................................................. 17

*Prime Media, Inc. v. Brentwood*,
   485 F.3d 343 (6th Cir. 2007) ..................................................................................... 9

*Railroad Comm'n of Texas v. Pullman Co.*,
   312 U.S. 496 (1941) ............................................................................................ 18, 19

*Rondigo, LLC v. Twp. of Richmond*,
   641 F.3d 673 (6th Cir. 2011) ..................................................................................... 5

*Schaffer v. Clinton*,
   240 F.3d 878 (10th Cir. 2001) ................................................................................... 1

*Seminole Tribe v. Florida*,
   517 U.S. 44 (1996) .................................................................................................... 19

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................................... 5

*State v. Lyons*,
    802 S.W.2d 590 (Tenn. 1990) ........................................................................... 17

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................... 5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................... 8

*Traughber v. Beauchane*,
    760 F.2d 673 (6th Cir. 1985) ........................................................................... 18

*United States v. Hansen*,
    143 S. Ct. 1932 (2023) ..................................................................................... 11

*United States v. Krumrei*,
    258 F.3d 535 (6th Cir. 2001) ...................................................................... 11, 15

*United States v. Requena*,
    980 F.3d 30 (2d Cir. 2020) ............................................................................... 11

*United States v. Williams*,
    553 U.S. 285 (2008) ................................................................................. passim

*Universal Life Church Monastery Storehouse v. Nabors*,
    35 F.4th 1021 (6th Cir. 2022) ........................................................................... 19

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
    454 U. S. 464 (1982) ......................................................................................... 8

*Vill. of Hoffman Ests. v. Flipside, Hoffman,*
    *Ests.*, 455 U.S. 489 (1982) ................................................................. 1, 11, 15, 17

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ................................................................................... 10, 18

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018) ........................................................................... 10

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ..................................................................................... 19

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ......................................................................................... 19

*Wright v. New Jersey*,
  469 U.S. 1146 (1985)........................................................................................ 17

*Zwickler v. Koota*,
  389 U.S. 241 (1967)........................................................................................ 18

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 20

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 4

Tenn. Code Ann. § 49-1-102(b)........................................................................... 2

Tenn. Code Ann. § 49-1-201 ............................................................................... 2

Tenn. Code Ann. § 49-6-1019 ............................ 3, 4, 9, 10, 12, 13, 14, 16, 20

Tenn. Const. art. XI, § 12.................................................................................... 2

U.S. Const. Art. III § 2 ....................................................................................... 3

**Regulations**

Tenn. Comp. R. & Regs. 0520-01-01-.01............................................................ 2

Tenn. Comp. R. & Regs. 0520-12-04-.01............................................................ 4

Tenn. Comp. R. & Regs. 0520-12-04-.03............................................................ 3

Tenn. Comp. R. & Regs. 0520-12-04-.04............................................................ 4

Tenn. Comp. R. & Regs. 0520-12-04-.05........................................... 4, 7, 17, 20

Tenn. Comp. R. & Regs. 0520-12-04-.07........................................................ 4, 20

Tenn. Comp. R. & Regs. 0520-12-04(8) ........................................................... 20

**Other**

H.B. 0580 Before H. Floor Sess., 33rd Legis. Day at 38:33-38:53, 112th Gen. Assemb.
 (May 4, 2021)(Rep. John Ragan)...................................................................... 3

## INTRODUCTION

The Rules of Civil Procedure require dismissal when a plaintiff "can[not] construct a claim from the events [alleged] in the complaint." *16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quotations omitted). And Plaintiffs ("Teachers") cannot do so here. Teachers assert a single theory: vagueness. Armed with hypotheticals and manufactured ambiguity, Teachers seek to *facially* invalidate a slew of statutory provisions at the core of the State's power—public education. But Teachers cannot invoke this Court's jurisdiction to challenge those provisions, let alone allege facts to support their sweeping constitutional challenge.

As a threshold matter, Teachers lack standing to challenge the "Restrictions on course instruction that includes or promotes certain concepts related to race or sex" ("the Act"). That law has never been enforced against any educator, ever. And Teachers have alleged no *certain* threat of enforcement here. *See Crawford v. Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017). That ends the inquiry. Mere "moral outrage . . . does not endow [Teachers] with standing to sue." *Schaffer v. Clinton*, 240 F.3d 878, 884 (10th Cir. 2001). And it certainly does not give Teachers the right to ignore the provision-by-provision approach required to establish standing.

Even if Teachers had standing to sue, their facial vagueness challenge is a nonstarter: "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 495 .7 (1982) (citation omitted). And Teachers do not claim any First Amendment rights have been violated. Nor do they come close to showing that the Act's provisions are "impermissibly vague in *all* of [their] applications." *Id.* at 497. They do not even allege facts establishing that the Act's provisions are unconstitutionally vague as-applied to the facts of this case. The question here is not "the wisdom, need, or appropriateness of [Tennessee's]

1

legislation." *Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*, 313 U.S. 236, 246 (1941). The General Assembly was well within its right to implement limitations on advocacy within the classroom, and federal courts "possess neither the expertise nor the prerogative" to question the political branches' "policy judgment[]." *Clemons v. Couch*, 3 F.4th 897, 906 (6th Cir. 2021) (quotations omitted). Rather, courts interpret the law, and the law here is not vague.

The Court should grant Defendants' motion and dismiss this case with prejudice.

## BACKGROUND

The Tennessee Constitution grants the State's children a right to public education. Tenn. Const. art. XI, § 12. Thus, the State plays a critical role in the development of policies for public schools: it "is responsible for maintaining discipline, health, and safety" of its students. *Bd. of Educ. v. Earls*, 536 U.S. 822, 830 (2002). For this reason, "the Supreme Court has afforded deference to their decisions even when examining certain constitutional issues." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 802 (11th Cir. 2022) (en banc).

The State's commitment to "a system of free public schools" necessarily requires it to "provide for [its] maintenance, support and eligibility standards." Tenn. Const. art. XI, § 12. The State Board of Education ("Board") fulfills this obligation by "prescrib[ing] rules and regulations for . . . all public schools." Tenn. Comp. R. & Regs. 0520-01-01-.01. The Department of Education ("Department"), through its Commissioner, implements the Board's and the General Assembly's laws, rules, and policies. Tenn. Code Ann. §§ 49-1-102(b); 49-1-201(a).

In 2021, the General Assembly found it necessary to protect its K-12 students by requiring its teachers to abide by nondiscriminatory policies and procedures. To accomplish this goal, it placed restrictions on the teaching of fourteen divisive concepts in the Act. The Sponsor of the Act explained that the Act ensures that Tennessee's children understand "that they stand as

individuals, equal before our laws" and learn that "their identity [is] defined by the content of their character, not the color of their skin, their sex, ethnicity, or membership in some social class." H.B. 0580 Before H. Floor Sess., 33rd Legis. Day at 38:33-38:53, 112th Gen. Assemb. (May 4, 2021) (Rep. John Ragan).

The Act prohibits Tennessee local education agencies and public charter schools ("LEAs") from "includ[ing] or promot[ing] in a course of instruction, curriculum and instructional program, or in supplemental instructional materials":

(1)     One [] race or sex is inherently superior to another race or sex;
(2)     An individual, by virtue of the individual's race or sex, is inherently privileged, racist, sexist, or oppressive, whether consciously or subconsciously;
(3)     An individual should be discriminated against or receive adverse treatment because of the individual's race or sex;
(4)     An individual's moral character is determined by the individual's race or sex;
(5)     An individual, by virtue of the individual's race or sex, bears responsibility for actions committed in the past by other members of the same race or sex;
(6)     An individual should feel discomfort, guilt, anguish, or another form of psychological distress solely because of the individual's race or sex;
(7)     A meritocracy is inherently racist or sexist, or designed by a particular race or sex to oppress members of another race or sex;
(8)     This state or the United States is fundamentally or irredeemably racist or sexist;
(9)     Promoting or advocating the violent overthrow of the United States government;
(10)    Promoting division between, or resentment of, a race, sex, religion, creed, nonviolent political affiliation, social class, or class of people;
(11)    Ascribing character traits, values, moral or ethical codes, privileges, or beliefs to a race or sex, or to an individual because of the individual's race or sex;
(12)    The rule of law does not exist, but instead is a series of power relationships and struggles among racial or other groups;
(13)    All Americans are not created equal and are not endowed by their Creator with certain unalienable rights, including, life, liberty, and the pursuit of happiness; or
(14)    Governments should deny to any person within the government's jurisdiction the equal protection of the law.

Tenn. Code Ann. § 49-6-1019(a); Tenn. Comp. R. & Regs. 0520-12-04-.03(1).  However, the Act

3

does not limit instruction related to: (1) "[t]he history of an ethnic group"; (2) "[t]he impartial discussion of controversial aspects of history"; (3) "[t]he impartial instruction on the historical oppression of a particular group of people based on race, ethnicity, class, nationality, religion, or geographic region"; or (4) historically significant or venerated documents "relevant to subdivisions (b)(1)-(3)."  Tenn. Code Ann. § 49-6-1019(b); *see* Tenn. Comp. R. & Regs. 0520-12-04-.03(2).

The Department's Rules "effectuate" the Act.  Tenn. Comp. R. & Regs. 0520-12-04-.01. They require LEAs to "[e]nsure" the Act's "compliance."  *Id*. 0520-12-04-.04(a)(1).  As a result, LEAs must self-regulate "by investigating suspected violations and complaints."  *Id*.  If an LEA has the authority to investigate a complaint—i.e., the allegation relates to the inclusion of a prohibited concept—then the LEA must decide if the complaint is "substantiated."  *Id*. 0520-12-04-.05(6), -.05(8).  A complaint is "substantiated" if the LEA finds that the teacher "affirmatively and intentionally included or promoted the concept at issue."  *Id*. 520-12-04-.05(8)(b) (the affirmative defense).  If substantiated, the LEA "shall take appropriate remedial action," which may include "[d]isciplinary action against a teacher."  *Id*. 0520-12-04-.05(10).

The complainant or the accused may appeal this decision to the Department.  *Id*. 0520-12-04-.07.  If an LEA's finding that a teacher included or promoted a Prohibited Concept is upheld on appeal, the LEA "shall determine whether disciplinary action is warranted."  *Id*.  Neither the Act nor the Rules implementing it require the Department or Board to take disciplinary action against a teacher.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  This standard demands "more than the bare assertion of legal conclusions," requiring Teachers to allege "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006) (quotation omitted).  When a complaint fails to allege "*fact*[*s*]" that "'raise the right to relief above the speculative level,'" *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555), defendants are "spar[ed] . . . a time-consuming and expensive discovery process."  *Agema v. Allegan*, 826 F.3d 326, 332 (6th Cir. 2016).

"Article III standing is a question of subject matter jurisdiction properly decided under 12(b)(1)."  *Am. BioCare Inc. v. Howard & Howard Att'ys*, 702 F. App'x 416, 419 (6th Cir. 2017). Facial attacks to subject-matter jurisdiction are governed by the same standard applied to Rule 12(b)(6) challenges.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

## ARGUMENT

### I.       Teachers Lack Standing to Challenge the Act.

"[U]nder our constitutional system[, federal] courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws."  *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973).  Article III limits federal-court jurisdiction to "Cases" and "Controversies."  U.S. Const. Art. III § 2, cl. 1.  The requirement that a plaintiff demonstrate standing "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (internal quotation marks omitted).  Teachers must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

An Article III injury can sometimes be established *before* the enforcement of a statute.  But to do so, a plaintiff must prove "an intention to engage in a course of conduct arguably affected

with a constitutional interest[] but proscribed by" some provision of the Act. *Crawford*, 868 F.3d at 454 (quotations omitted). And it must then prove "a *certain* threat of prosecution if the plaintiff does indeed engage in that conduct." *Id.* at 455. Teachers cannot satisfy these requirements and, therefore, lack standing to challenge any aspect of the Act. At a minimum, though, Teachers cannot challenge the constitutionality of each individual provision of the Act.

      **a. The Individual Teachers have not been injured.**

      Teachers cannot show "an injury in fact . . . fairly traceable to the challenged conduct of the defendant." *FEC v. Cruz*, 142 S. Ct. 1638, 1646 (2022).

      ***The Individual Teachers fail to allege a certain threat of enforcement***. Even assuming the Act "proscribes [Teachers'] intended conduct," this Court does not assume that every breach of the law will result in disciplinary action. *See McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016). Instead, it assesses the imminence of enforcement through a holistic, four-part framework—the "*McKay* factors." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021). Specifically, the Court requires "some combination" of the following factors: "(1) 'a history of past enforcement against the plaintiffs or others'; (2) 'enforcement warning letters sent to the plaintiffs regarding their specific conduct'; (3) 'an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action'; and (4) the 'defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'" *Id.* (quoting *McKay*, 823 F.3d at 869). Each of those factors cuts against Teachers' assertion of standing.

      <u>No History of Past Enforcement</u>. First, while the Act was in effect during the 2021-2022 and 2022-2023 academic years, Teachers failed to identify any classroom teacher against whom

an enforcement action was taken.[1]  Not one single educator has been disciplined as a result of the Act.  It is, thus, hard to credit Teachers' claim of a *certain* threat of enforcement.

*No Warning Letters.*  Second, the Complaint does not allege that Teachers received any "enforcement letters" tied to Teachers "specific conduct," so this factor cuts against standing. *Online Merchs.*, 995 F.3d at 550.

*No Attributes Making Enforcement Easy.*  Third, the Act does not "allow[] any member of the public to initiate an enforcement action."  *Id.*  Only an "eligible complainant"—students, parents, or employees of an LEA—can file a complaint with the LEA or public charter school. Tenn. Comp. R. & Regs. 0520-12-04-.05(2)-(3), (6).  And, even then, an enforcement action does not automatically ensue.  The LEA or public charter school "determines whether it has authority to investigate the complaint," and if so, "determine[s] whether the allegation(s) where substantiated" before "issu[ing] a written determination." *Id.* 0520-12-04-.05(6)-(9).  If a violation is found, the LEA or public charter school has the discretion to "take appropriate remedial action." *Id.* 0520-12-04-.05(10).  Thus, the universe of potential complainants is limited, and a complaint *may* trigger an *investigation*—not an enforcement action.

*Disavowal of Enforcement*.  Finally, there has been no "refusal to disavow enforcement of the challenged statute against" Teachers.  *Online Merchs.*, 995 F.3d at 550 (quotations omitted). Teachers do not allege that they even requested the Department or the Board "disavow enforcement" of the Act as to them.  *Id.*  Therefore, this factor of the *McKay* test weighs against standing.

---

[1] The Complaint dedicates six pages to the story of Terri Bradshaw—who is not a plaintiff to this suit.  Compl., ¶¶ 67-83.  The Complaint against Ms. Bradshaw concerned whether the book *Dragonwings* comported with the Act and Board Rules for 6th grade curriculum.  *Id.*  It did not stem from the enforcement of the Act against a teacher's classroom instruction.  *Id.*

7

In short, Teachers did not allege any—much less, "some combination"—of the *McKay* factors, 823 F.3d at 869, and therefore did not prove a certain threat of prosecution. This Court should dismiss Teachers' claims for lack of standing.

   ***The Individual Teachers failed to allege an injury that is fairly traceable to the allegedly unlawful conduct of Defendants.*** Setting aside the lack of injury, Teachers cannot show that their asserted injury is "fairly traceable to the challenged *action of the defendant*[*s*]" in this appeal. *Lujan*, 504 U.S. at 560 (cleaned up) (emphasis added). The State has neither enforced nor threatened to enforce the Act against Teachers. And the Complaint points to no other unlawful conduct by the State. "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to *allegedly unlawful conduct of the defendant*, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (cleaned up) (emphasis added). Because Teachers "do[] not claim to have suffered an injury *that the defendant caused* . . . there is no case or controversy" between the parties to this suit. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (emphasis added) (quotations omitted).

   The bottom line: Teachers seek to challenge the Act's mere existence—not any threatened enforcement action. The Act has *never* been enforced against a teacher. One cannot, in good faith, conclude that a *certain* threat of enforcement exists, nor that Defendants have engaged in conduct that harms Teachers. Article III standing is "not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers of the Constitution." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 476 (1982). This Court should respect the limits on its jurisdiction and dismiss for lack of standing.

   **b. At a minimum, Teachers lack standing to challenge each provision of the Act.**

   Even if Teachers intend to violate the Act *and* face a certain threat of enforcement, this

8

Court still lacks jurisdiction to review Tenn. Code Ann. § 49-6-1019(a)(5), (6), (8), (9), and (12).

Federal courts "address[] the injury in fact question on a *provision-specific basis.*" *Prime Media, Inc. v. Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007) (emphasis added). That means that "a plaintiff must establish . . . standing to challenge each provision" of a law separately "by showing that he was [or will be] injured by application of" each separate provision. *Midwest Media Prop. v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007) (quotations omitted). Binding precedent explicitly "reject[s] the idea that an injury in fact under one provision creates standing to challenge other distinct provisions," *Prime Media*, 485 F.3d at 351, where the injury "is not 'fairly traceable' to . . . parts of the law that did not cause any injury," *Davis v. Colerain Township*, 51 F.4th 164, 171 (6th Cir. 2022).

Here, Teachers' flout their obligation to establish standing on a provision-by-provision basis. The Complaint alleges a series of facts tied to the individual Teachers, but those assertions do not implicate each provision of the Act. Specifically, each Teacher fails to plead facts that undergird claims against Tenn. Code Ann. § 49-6-1019(a)(5), (6), (8), (9), and (12).

Lessons regarding African American spirituals, *Plessy v. Ferguson*, and Martin Luther King, Jr. cannot conceivably necessitate instruction that Tennessee or the "United States is fundamentally or irredeemably racist" or "[a]n individual *should* feel discomfort" because of their race. Tenn. Code Ann. § 49-6-1019(a)(6), (8) (emphasis added). Similarly, the Teachers have not set forth a single field of study that would require them to promote or advocate for "the violent overthrow of the United States government" or instruct that "[t]he rule of law does not exist." *Id.* § 49-6-1019(a)(9), (12). Finally, the concept that "[a]n individual, by virtue of the individuals race or sex, bears responsibility for actions committed in the past by other members of the same race or sex" is not inherent in discussions of Frida Kahlo, Keith Haring, civil rights movement leaders,

Martin Luther King, Jr., African American spirituals, or the novel *1984*. *Id.* § 49-6-1019(a)(5).

Therefore, if this Court finds Teachers have standing, it should limit the scope of Teachers' claim to the "particular provisions" implicated. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230 (1990).

## II.     TEA's standing only goes as far as the Teachers' standing.

The TEA's assertion of standing rests entirely on its association with Teachers.   Compl., ¶¶ 1, 121.  "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right."     *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 254-55 (6th Cir. 2018) (quotations omitted).  But an association cannot sue on behalf of some "unknown member"; it must actually "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Association of American Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021). Therefore, TEA's standing is limited by the Teachers' standing. *See supra* Part I.

## III.     The Complaint Fails to State a Vagueness Claim.

Even taking all the facts alleged in the Complaint as true, the allegations do not show that the Act is unconstitutionally vague.  The Due Process Clause's "void for vagueness" doctrine ensures that a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited" by the law.  *Grayned v. Rockford*, 408 U.S. 104, 108 (1972).  But "perfect clarity and precise guidance" are not required.  *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  The law is full of "flexible" "standards," *id.*, and "[c]lose cases can be imagined under virtually any statute," *United States v. Williams*, 553 U.S. 285, 306 (2008).

The Act poses no vagueness problem.  Teachers cannot allege facts sufficient to support a facial attack.  Nor can they show the statute is vague as-applied.

### A.     The Act is not facially void-for-vagueness.

Teachers cannot plead a facial vagueness challenge.  "Vagueness challenges to statutes

which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Hoffman Ests.*, 455 U.S. at 495 n.7 (citation omitted). Teachers have not—and cannot—allege that "First Amendment freedoms are . . . infringed by [the Act], so the vagueness claim must be evaluated as the statute is applied to the facts of this case." *Chapman v. United States*, 500 U.S. 453, 467 (1991). In other words, a facial vagueness challenge is not cognizable. *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). Teachers must allege facts "establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation," which is required to establish facial invalidity. *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001).

Regardless, Teachers cannot allege facts that satisfy the heightened standard necessary to show facial invalidity. "[L]itigants mounting a facial challenge to a statute . . . must establish that *no set of circumstances* exists under which the statute would be valid." *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (quotation omitted). That generally means "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Hoffman Ests.*, 455 U.S. at 497. In vagueness challenges implicating First Amendment rights and in other narrow circumstances, this vague-in-all-applications requirement has been relaxed. *United States v. Requena*, 980 F.3d 30, 41 (2d Cir. 2020). But none of those limited categories apply here because Teachers assert no First Amendment claim. Teachers must, therefore, show that there are no constitutionally permissible applications of the challenged statutory language.

Teachers argue that seven aspects of the Act are unconstitutionally vague: (1) the instruction not to "promote" certain concepts; (2) the instruction not to "include" certain concepts; (3) the gerunds used in prohibited concepts 9-11; (4) the use of "division between, or resentment of" in prohibited concept 10; and (5) the use of "impartial" and "controversial" in the § 46-6-

11

1019(b)(2) carve-out.  Compl., ¶¶ 41, 42, 48, 49, 56.  Yet, a cursory review shows that these statutory terms are not unconstitutionally vague in *all* of their applications.

**Promote**:  The Act's use of the term "promote" cannot possibly be unconstitutionally vague in all of its applications.  Take, for example, prohibited concept 1, which instructs LEAs not to "promote" the "concept[]" that "[o]ne (1) race or sex is inherently superior to another race or sex." Tenn. Code Ann. § 49-6-1019(a)(1).  This prohibition clearly prevents employees from furthering the view that White people are superior to Black people—and vice versa.

Prohibit concept 3 instructs employees not to "promote" the "concept[]" that "[a]n individual should be discriminated against or receive adverse treatment because of the individual's race or sex."  *Id.* § 49-6-1019(a)(3).  This prohibition indisputably prevents employees from advancing the view that Black people should be discriminated against.  It clearly prevents employees from fostering the view that women should make less money because of their sex.

The list goes on.  The point is that there are countless situations in which the Act's restriction on the "promot[ion]" of prohibited concepts can be constitutionally applied.  And that means that Teachers' facial vagueness challenge cannot succeed.

**Include**:  The same goes for the Act's usage of "include":  A myriad of constitutional applications exists.  Prohibited concept 9 instructs LEAs not to "include" "concepts" "[p]romoting or advocating the violent overthrow of the United States government."  *Id.* § 49-6-1019(a)(9).  This prohibition clearly covers, for example, videos from ISIS advocating for the overthrow of our government.[2]  Prohibited concept 4 instructs LEAs not to "include" the "concept[]" that "[a]n individual's moral character is determined by the individual's race or sex."  *Id.* § 49-6-1019(a)(4).

---

[2] This prohibited concept, like the others, is subject to Tenn. Code Ann. §49-6-1019(b).  The point is that there are numerous examples that clearly "include" the prohibited concept, meaning that the "include" language is not vague in all of its applications.

This prohibition undoubtedly covers the inclusion of curriculum containing the false stereotypes that White people are dishonest, Black people are not trustworthy, and Hispanic people are lazy. None of these concepts belong in our educational system, and the Act clearly prohibits them from being "include[d]." So, again, there are a plethora of constitutional applications of the Act's restriction on the "inclus[ion]" of prohibited concepts—meaning that, again, Teachers' facial vagueness challenge cannot succeed.

***Gerunds in Prohibited Concepts 9-11***: Teachers next challenge the gerunds used in concepts 9-11. Compl., ¶¶ 47-49. For these concepts, the Act states that LEAs shall not "include or promote the following concepts:" "(9) [p]romoting or advocating the violent overthrow of the United States Government," "(10) [p]romoting division between, or resentment of, a race, sex, religion, creed, nonviolent political affiliation, social class, or class of people," and (11) "[a]scribing character traits, values, moral or ethical codes, privileged, or beliefs to a race or sex, or to an individual because of the individual's race or sex." Tenn. Code Ann. §§ 49-6-1019(a)(9)-(11). This drafting may be inartful, but it is not unconstitutionally vague. Teachers' suggestion that "educators can do little more than guess at the meaning of these proscriptions" is nothing more than ill-founded hyperbole. Compl., ¶ 48.

Again, a plethora of constitutional applications exist. As discussed, prohibited concept 9 clearly encompasses ISIS material that "include[s]" "concepts" "[p]romoting or advocating the violent overthrow of the United States government." Tenn. Code Ann. § 49-6-1019(a)(9). Prohibited concept 10 covers material from the Ku Klux Klan that "include[s]" "concepts" "[p]romoting division between, or resentment of, a race, sex, religion, creed, nonviolent political affiliation, social class, or class of people." *Id*. § 49-6-1019(a)(10). And prohibited concept 11 can be used to prohibit material on "white privilege" that "include[s]" "concepts" "[a]scribing

13

character traits, values, moral or ethical codes, privileged, or beliefs to a race or sex, or to an individual because of the individual's race or sex." *Id.* § 49-6-1019(a)(11).

The gerunds in the prohibited concepts in no way leave educators unable "to understand what" content the Act "prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). And, again, these concepts have numerous clear (and constitutional) applications, so facial unconstitutionality is off the table.

***Division between, or resentment of***: Teachers next claim that prohibited concept 10's restriction on "concepts" "[p]romoting division between, or resentment of, a race, sex, religion, creed, nonviolent political affiliation, social class, or class of people" is unconstitutionally vague because the phrases "division between" and "resentment of" focus "on the subjective reaction of listeners, not on the conduct of educators." Compl., ¶ 49. In their view, "[t]he very same speech or conduct may be perceived as 'divisive' by, or give rise to feelings of 'resentment' in, some parents and students, and have no such effect on others," making this prohibition a restriction on "offending . . .students." *Id.*

The Supreme Court has rejected this theory of vagueness. There may be "close cases" as to whether materials promote division or resentment. *Williams*, 553 U.S. at 306. The Court has stated that "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.*

Regardless, there are vast categories of content that clearly (and explicitly) "promot[e]" the division of people based on race—e.g., certain material from the Ku Klux Klan or Nation of Islam. Surely, the State has the power to prohibit such material from our schools. So, again, constitutional applications of this prohibited concept exist, and a claim for facial invalidity cannot pass muster.

***Impartial and controversial***:  Finally, Teachers suggest that the Act's carve out for "[t]he impartial discussion of controversial aspects of history" provides "no guidance to Tennessee educators."  Compl., ¶ 56.  But, as with all the other challenged terms, there are an abundance of constitutional applications of this carve-out: a factual recitation of the Holocaust, an explanation of slavery, a description of the Ku Klux Klan's action in the wake of the Civil War, a historical account of women's rights.  Even assuming some ambiguity or close calls, these constitutional applications doom Teachers' facial challenges. While Teachers may believe there is no such thing as an impartial discussion of anything, the Constitution does not mandate their nihilism.

The Court should, at a minimum, dismiss Teachers' facial challenges.  *See Paramount Contractors & Devs. v. Los Angeles*, 2007 WL 9662264, at *13 (C.D. Cal. July 23, 2007).

### B.      The Act is not unconstitutionally vague as-applied.

Teachers fail to allege facts "establishing that the statute is vague as applied to [their] particular case[s]."  *Krumrei*, 258 F.3d at 537.  The vagueness analysis is conducted with a recognition that the law allows "flexible" standards, *Williams*, 553 U.S. at 306, with acknowledgment of the "greater tolerance [for] enactments with civil rather than criminal penalties," *Hoffman Ests.*, 455 U.S. at 498-99, and with the constitutional avoidance canon guiding the Court's analysis, *Déjà Vu v. Union Twp.*, 411 F.3d 777, 786 (6th Cir. 2005).  Facing a deck stacked against vagueness, Teachers must allege specific, particularized facts that do not just present "[c]lose cases," *Williams*, 553 U.S. at 306, but that show that no reasonable person could understand what the challenged provisions seek to prohibit.  They fail to do so.

The Complaint sets out the "facts" in generalized terms.  For example, McIntosh "believes that the Ban creates substantial risks for her as a substitute teacher," but identifies no content that

she intends to teach that implicates any vagueness in the Act. Compl., ¶ 98.[3] Stein wants to teach *Plessy v. Ferguson*, George Orwell's *1984*, and "young adult novels," but he does not explain how that desire implicates any ambiguity in the Act. *Id.* at ¶¶ 91-93. The only vague thing here is the Teachers' theories.

The allegations of other Teachers make little sense. Dickenson, for instance, claims to fear that a book about Rosa Parks and biography of Martin Luther King Jr. could be perceived as "promoting division." Compl., ¶ 94. It is hard to see how these examples—e.g., the story of Rosa Parks's efforts to *dismantle* segregation—could be read to "promot[e] division." But, regardless, the dearth of alleged facts does not establish that a ban on "promoting division" is so vague that a reasonable teacher could not figure out what conduct the restriction could possibly cover.

Finally, Wilson wants to include "African American spirituals" in choir class and discuss "the historical context in which the music was written," including "the brutality of slavery and enslaved peoples' efforts to obtain freedom from white enslavers." *Id.* at ¶¶ 88-90. As described, the Act clearly allows as much: It permits "impartial instruction on the historical oppression of a particular group of people based on race." Tenn. Code Ann. § 49-6-1019(b)(3). The requirement that the discussion be "impartial" does not leave Wilson without any notice of the Act's requirements. "Impartial" is no more vague than "reasonable" or "deceptive"—terms that litter the U.S. and Tennessee Codes. To be sure, there may be "close cases" as to what qualifies as impartial, *Williams*, 553 U.S. at 306, but this does not mean that the statute is vague. And, regardless, Roland does not allege enough facts as to the content of his historical discussion to

---

[3] McIntosh's allegations about her experiences in the past teaching lessons on contemporary issues are irrelevant. Compl., ¶ 97. McIntosh alleges no intention to teach these classes moving forward; rather, she intends to serve as a substitute teacher who lacks control "over the lessons planned for th[e] day." *Id.* ¶ 98. And this suit seeks prospective relief. Compl. at 50.

even evaluate whether the application of the impartiality requirement is unconstitutionally vague as applied.

And if any question remains, the scienter requirement applicable to teachers "alleviate[s] any] vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149-50 (2007). The Supreme Court has *repeatedly* recognized that a scienter requirement "mitigate[s] a law's vagueness, especially with respect to the adequacy of notice . . . that [the] conduct is proscribed." *Hoffman Ests.*, 455 U.S., at 499. For a claim to be "substantiated" against a teacher, the LEA must "determine[] that the complained of individual *affirmatively and intentionally* included or promoted the concept at issue." Tenn. Comp. R. & Regs. 0520-12-04-.05. This scienter requirement "mitigates" any vagueness by "ensur[ing] that [teachers have] adequate notice" and "guarding against capricious enforcement" by requiring Teachers to "actually have intended the conduct which the statute seeks to guard against." *Wright v. New Jersey*, 469 U.S. 1146, 1152 n.5 (1985) (cleaned up); *see also Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994).

Teachers attempt to read out the scienter requirement, claiming that "an educator's on-the-job speech and conduct will *always* be "affirmative[] and intentional[]." Compl., ¶ 45. Yet, "punishment depends on a vital element of scienter," such that a defendant must have "awareness of the character of the materials, not simply their contents." *Counterman v. Colorado*, 600 U.S. 66, 8 & n.4 (2023) (cleaned up). The same is true for Teachers. By the text of the rule, Teachers must not only affirmatively and intentionally include or promote a prohibited concept, but they must also have awareness that these materials violate the Act.

Teachers ask this Court to hold that the Act is unconstitutionally vague because it is "applicable in a wide variety of situations, [and] must necessarily use words of general meaning, because greater precision is both impractical and difficult." *State v. Lyons*, 802 S.W.2d 590, 592

17

(Tenn. 1990). But that is not how vagueness works. *Id.* "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110. There does not have to be "perfect clarity and precise guidance" as to how the Act would apply to Teachers' intended conduct. *Ward*, 491 U.S. at 794. After all, the doctrine allows "[c]lose cases." *Williams*, 553 U.S. at 306. The as-applied vagueness challenges should be dismissed.

## IV. This Court Should Abstain and Allow State Courts to Interpret the Act.

At bottom, Teachers' challenge opportunistically rests on the absence of case law in Tennessee courts interpreting the allegedly vague language. Of course, there is a solution: Allow the Tennessee State courts to construe the State statute in the first instance, which may result in an interpretation "that would avoid or modify the constitutional question." *Zwickler v. Koota*, 389 U.S. 241, 249 (1967). When faced with a "federal constitutional claim . . . premised on an unsettled question of state law," the appropriate course is abstention under the *Railroad Comm'n of Texas v. Pullman* doctrine to "provide the state courts an [o]pportunity" to weigh in. *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975); *see Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) . Doing so "affords the [Tennessee] courts the respect they are due as . . . equals in a federalist judicial system." *Gottfried v. Med. Plan. Servs.*, *Inc.*, 142 F.3d 326, 332 (6th Cir. 1998). Abstention is particularly advisable where the state law "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *See Railroad Comm'n of Texas*, 312 U.S. at 498.

Teachers' vagueness theory implicates "an unsettled question of state law": the proper interpretation of various terms in the Act. *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999). A Tennessee court's interpretation of the Act could "remove the federal issue by making unnecessary a constitutional decision." *Traughber v. Beauchane*, 760 F.2d 673, 682 (6th Cir. 1985); *Lake*

*Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 511 (1972). This Court should abstain from an interpretation and constitutional analysis of the Act that would likely result in a "forecast rather than a determination." *Railroad Comm'n of Texas*, 312 U.S. at 499.

## V. The Commissioner of Tennessee's Department of Education Must be Dismissed.

At a minimum, the Court should dismiss Commissioner Lizzette Gonzalez Reynolds because she has no role in enforcing disciplinary action against teachers who violate the Act.

*First*, no enforcement authority means no standing. A plaintiff must "*separately*" demonstrate standing to sue *each* defendant on *each* claim for *each* form of relief. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). Standing's "traceab[ility]" prong requires Teachers to prove that their supposed injury "can be traced to [the] allegedly unlawful conduct of" the Commissioner, "not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal citations omitted). And the "redressability" prong requires Teachers to show "how the requested relief against" the Commissioner "could redress [its] alleged injuries-in-fact." *Universal Life Church Monastery Storehouse*, 35 F.4th at 1031. Teachers can do neither here because the Commissioner does not enforce the Act against teachers. Teachers thus lack standing to sue the Commissioner.

*Second*, Teachers cannot overcome sovereign immunity. A claim against "a state official in his or her official capacity" is generally treated as a claim against "the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and a State is not "amenable to the suit of an individual without its consent," *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (quotations omitted). The Supreme Court, in *Ex parte Young*, 209 U.S. 123 (1908), created a "narrow exception" to that rule, allowing suit to enjoin an official "from enforcing state laws" in ways that run "contrary to federal law." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). But because the Commissioner cannot enforce the Act, the *Ex parte Young* exception "does not apply."

19

*EMW Women's Surgical Ctr. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019) (quotations omitted)

*Third*, Teachers lack a right of action against the Commissioner under 42 U.S.C. § 1983. "Because vicarious liability is inapplicable to . . . suits" under § 1983, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Such a claimant must also show "a causal connection between the defendant's unconstitutional action and the plaintiff's injury." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020). Teachers have not—and cannot—show as much because the Commissioner plays no role in enforcing the Act against teachers.

To overcome these issues, Teachers claim that the Commissioner "determines appeals related to the Ban pursuant to Tenn. Comp. R. & Regs 0520-12-04(8)." Compl., ¶ 17. Teachers suggest that their injury (the alleged threat of disciplinary enforcement) will result from the Commissioner's oversight of the appeal. But the LEAs, not the Commissioner, control the discipline of educators pursuant to the Act. *See id.*; *see also id.* 0520-12-04-.07. On appellate review, the Commissioner can only exercise authority over the LEA, not the educators. Tenn. Code Ann. § 49-6-1019(c); Tenn. Comp. R. & Regs. 0520-12-04-.05(8)(b). Because the Commissioner has no enforcement authority over Teachers, she must be dismissed.

## CONCLUSION

The Court should grant the motion and dismiss this case with prejudice.

Respectfully submitted,

JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER

*/s/ Ryan Nicole Henry*
Ryan N. Henry (BPR #40028)
Assistant Attorney General
Brooke A. Huppenthal (BPR #40276)
Assistant Attorney General
Office of the Tennessee Attorney General
P. O. Box 20207
Nashville, TN 37202-0207
(615) 741-9598
ryan.henry@ag.tn.gov
brooke.huppenthal@ag.tn.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, the undersigned filed the foregoing

document using the Court's Electronic Court-Filing system, which sent notice of filing to the

following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| David R. Esquivel (BPR # 021459)<br>Jeremy A. Gunn (BPR # 039803)<br>BASS, BERRY & SIMS PLC<br>150 Third Ave. S., Suite 2800<br>Nashville, TN 37201<br>Tel. 615-742-6200<br>Fax 615-742-6293<br>desquivel@bassberry.com<br>jeremy.gunn@bassberry.com<br><br>Carey R. Dunne<br>Kevin Trowel<br>Martha Reiser<br>FREE AND FAIR LITIGATION GROUP, INC.<br>266 W. 37th St., 20th Floor<br>New York, NY 10018<br>646-434-8604<br>carey@freeandfairlitigation.org<br>kevin@freeandfairlitigation.org<br>martha@freeandfairlitigation.org<br><br>Frances E. Bivens<br>Pascale Bibi<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>212-450-4935<br>frances.bivens@davispolk.com<br>pascale.bibi@davispolk.com | Counsel for Plaintiffs |
| Richard L. Colbert (BPR # 009397)<br>KAY GRIFFIN EVANS, PLLC<br>222 2nd Ave. N., Suite 340M<br>Nashville, TN 37201<br>Tel. 615-742-4800<br>Fax 615-742-4801<br>rcolbert@kaygriffin.com | Counsel for Tennessee Education Association |

Respectfully submitted,

*/s/ Ryan Nicole Henry*
RYAN N. HENRY