# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

TENNESSEE EDUCATION
ASSOCIATION, et al.,

     Plaintiffs,

    v.

LIZZETTE GONZALEZ REYNOLDS,
et al.,

     Defendants.

Case No. 3:23-CV-00751

District Judge Aleta A. Trauger

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

    I.    Passage of the Act and Promulgation of the Rules ............................................ 2

    II.   The Ban's Dramatic Impact on Plaintiffs ........................................................... 4

ARGUMENT .................................................................................................................... 5

    I.    Plaintiffs Have Standing to Challenge the Ban ................................................. 5

        A.   Plaintiffs Have Pleaded Injury in Fact ...................................................... 5

        B.   Plaintiffs' Injury in Fact Is Fairly Traceable to Defendants ..................... 9

        C.   Plaintiffs Have Standing with Respect to Every Provision of the Act ........ 10

    II.   Plaintiffs Have Adequately Pleaded a Vagueness Challenge to the Ban ......................... 11

        A.   Defendants Misstate the Standard Applicable to Facial Challenges ........................... 12

        B.   Plaintiffs Have Adequately Pleaded a Facial Vagueness Challenge ........................... 13

            1.    The Impartiality Clause ................................................................ 14

            2.    The Central Prohibition ................................................................ 16

        C.   Plaintiffs Have Adequately Pleaded an As Applied Challenge ................................. 19

    III.  The Court Should Not Abstain from Resolving the Constitutionality of the Ban ........ 23

    IV.  The Commissioner of Education Is a Proper Defendant ............................................. 24

CONCLUSION ................................................................................................................. 25

CERTIFICATE OF SERVICE ....................................................................................... 27

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Aubrey v. Cincinnati,*
815 F. Supp. 1100 (S.D. Ohio 1993) ..................................................... 15

*Babbitt v. United Farm Workers Nat. Union,*
442 U.S. 289 (1979) ..................................................... 8

*Baggett v. Bullitt,*
377 U.S. 360 (1964) ..................................................... 23

*Barber v. Charter Twp. of Springfield, Mich.,*
31 F.4th 382 (6th Cir. 2022) ..................................................... 5

*Barnett v. Raoul,*
No. 3:23-CV-00141-SPM, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) ............................. 13

*Bd. of Airport Comm'rs of City of L.A. v. Jews for Jesus, Inc.,*
482 U.S. 569 (1987) ..................................................... 23

*Bell v. Pulaski,*
184 S.W.2d 384 (Tenn. 1945) ..................................................... 16

*Buchanan v. Alexander, ,*
919 F.3d 847, 854 (5th Cir. 2019) ..................................................... 25

*Byrd v. Tenn. Wine & Spirits Retailers Ass'n,*
883 F.3d 608 (6th Cir. 2018) ..................................................... 16

*El Cenizo v. Texas,*
890 F.3d 164 (5th Cir. 2018) ..................................................... 17

*Houston v. Hill,*
482 U.S. 451 (1987) ..................................................... 23

*Coates v. Cincinnati,*
402 U.S. 611 (1971) ..................................................... 13, 17

*Coleman v. Ann Arbor Transp. Auth.,*
904 F. Supp. 2d 670 (E.D. Mich. 2012) ..................................................... 15

*Counterman v. Colorado,*
600 U.S. 66 (2023) ..................................................... 20

*Crawford v. Dep't of Treasury,*
868 F.3d 438 (6th Cir. 2017) ..................................................... 6

ii

*Davis v. Colerain Twp.*,
    51 F.4th 164 (6th Cir. 2022) ........................................................................ 10, 11

*Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees*,
    411 F.3d 777 (6th Cir. 2005) ............................................................................... 19

*Doe v. Roseville*,
    296 F.3d 431 (6th Cir. 2002) ............................................................................... 25

*Doe v. DeWine*,
    910 F.3d 842 (6th Cir. 2018) ................................................................................. 9

*Dumont v. Lyon*,
    341 F. Supp. 3d 706 (E.D. Mich. 2018) ................................................................ 9

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................................. 24

*Ezell v. Chicago*,
    651 F.3d 684 (7th Cir. 2011) ............................................................................... 13

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ....................................................................................... 13, 14

*Fischer v. Thomas*,
    52 F.4th 303 (6th Cir. 2022) ............................................................................... 6, 8

*Fowler v. Benson*,
    924 F.3d 247 (6th Cir. 2019) .......................................................................... 22, 23

*Gibson Cnty. Special School Dist. v. Palmer*,
    691 S.W.2d 544 (Tenn. 1985) ............................................................................. 16

*Grayned v. Rockford*,
    408 U.S. 104 (1972) ............................................................................................. 13

*Guerrero v. Whitaker*,
    908 F.3d 541 (9th Cir. 2018) ............................................................................... 12

*Holder v. Humanitarian L. Project*,
    561 U.S. 1 (2010) ............................................................................................. 8, 14

*Johnson v. United States*,
    576 U.S. 591 (2015) ............................................................................... 12, 13, 18

*Jones v. Coleman*,
    848 F.3d 744 (6th Cir. 2017) ............................................................................... 23

*Kensu v. Corizon, Inc.*,
    5 F.4th 646 (6th Cir. 2021) ................................................................................. 22

iii

*Loc. 8027, AFT-N.H., AFL-CIO v. Edelblut*,
  No. 21-CV-1077-PB, 2023 WL 171392 (D.N.H. Jan. 12, 2023) .......................... 13

*Long v. Clarksville*,
  No. 3:22-CV-00267, 2022 WL 17875858 (M.D. Tenn. Dec. 22, 2022) .................... 14, 21, 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 9

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir. 2016) ............................................................ 8

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ....................................................................... 6

*Nat'l Abortion Fed'n v. Metro. Atlanta Rapid Transit Auth.*,
  112 F. Supp. 2d 1320 (N.D. Ga. 2000) ................................................. 15

*Nova Recs., Inc. v. Sendak*,
  706 F.2d 782 (7th Cir. 1983) ........................................................... 20

*Online Merchants Guild v. Cameron*,
  995 F.3d 540 (6th Cir. 2021) ........................................................ 8, 9

*Parsons v. U.S. Dep't of Just.*,
  801 F.3d 701 (6th Cir. 2015) ........................................................... 9

*Pennell v. San Jose*,
  485 U.S. 1 (1988) ........................................................................... 6

*Peoples Rts. Org., Inc. v. Columbus*,
  152 F.3d 522 (6th Cir. 1998) ......................................................... 20

*Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth. v. Chicago Transit Auth.*,
  767 F.2d 1225 (7th Cir. 1985) ....................................................... 14

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*,
  769 F.3d 447 (6th Cir. 2014) ........................................................... 8

*Posters 'N' Things, Ltd. v. United States*,
  511 U.S. 513 (1994) ..................................................................... 20

*Prime Media, Inc. v. Brentwood*,
  485 F.3d 343 (6th Cir. 2007) ..................................................... 10, 11

*Railroad Comm'n of Tex. v. Pullman*,
  312 U.S. 496 (1941) ..................................................................... 22

*Richmond Med. Ctr. for Women v. Gilmore*,
  55 F. Supp. 2d 441 (E.D. Va. 1999) ................................................ 20

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015) ................................................................ 6, 7, 9, 24

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) ................................................................................... 12

*Smith v. Goguen,*
    415 U.S. 566 (1974) ....................................................................................... 15

*Springfield Armory, Inc. v. Columbus,*
    29 F.3d 250 (6th Cir. 1994) ...........................................................................12

*United States v. Williams,*
    553 U.S. 285 (2008) ...................................................................... 16, 17, 19

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ..................................................................................... 5, 7

*Taylor v. Mich. Dep't of Corr.,*
    69 F.3d 76 (6th Cir. 1995) ............................................................................. 25

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas,*
    139 S. Ct. 2449 (2019) ................................................................................... 16

*United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.,*
    163 F.3d 341 (6th Cir. 1998) ..................................................................... 2, 14

*United States v. Cook,*
    914 F.3d 545 (7th Cir. 2019) .........................................................................12

*United States v. Davis,*
    139 S. Ct. 2319 (2019) ...............................................................................1, 12

*United States v. Krumrei,*
    258 F.3d 535 (6th Cir. 2001) ......................................................................... 19

*Universal Life Church Monastery Storehouse v. Nabors,*
    35 F.4th 1021 (6th Cir. 2022) .......................................................................... 9

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
    455 U.S. 489 (1982) ...................................................................................... 19

*Women's Med. Ctr. of Nw. Houston v. Bell,*
    248 F.3d 411 (5th Cir. 2001) ......................................................................... 13

*Wright v. New Jersey,*
    469 U.S. 1146 (1985) ..................................................................................... 20

*Ysleta Del Sur Pueblo v. Texas,*
    142 S. Ct. 1929 (2022)................................................................................... 18

*Zwickler v. Koota*,
   389 U.S. 241 (1967) ............................................................................ 23

<u>STATUTES & RULES</u>

Colo. Rev. Stat. § 18–3–602(1)(c) .......................................................... 20

N.J. Stat. § 2C:39-5d ............................................................................... 20

Tenn. Code Ann. § 49-1-201(a) ........................................................... 9, 23

Tenn. Code Ann. § 49-6-1019 .................................................................. 1

Tenn. Code Ann. § 49-6-1019(a)....................... 4, 10, 11, 16, 17, 18, 19, 22

Tenn. Code Ann. § 49-6-1019(b)................................... 10, 14, 21, 22

Tenn. Code Ann. § 49-6-1019(c)............................................................ 20

Tenn. Comp. R. & Regs. § 0520-02-03-.09 ........................................... 10

Tenn. Comp. R. & Regs. § 0520-12-04 *et seq.*....................................... 1

Tenn. Comp. R. & Regs. § 0520-12-04-.02...................................... 7, 11

Tenn. Comp. R. & Regs. § 0520-12-04-.03...................... 10, 14, 16, 17, 18, 19, 20, 22

Tenn. Comp. R. & Regs. § 0520-12-04-.05 .............................. 7, 8, 9, 10, 20

Tenn. Comp. R. & Regs. § 0520-12-04-.07................................... 8, 9, 24

# INTRODUCTION

Plaintiffs Kathryn Vaughn, Roland Wilson, Michael Stein, Rebecca Dickenson, and Mary McIntosh are dedicated and decorated Tennessee public servants with 100 years of combined teaching experience across grades and subject matters, from counties across the state. (¶¶ 12–16).[1] Together with the Tennessee Education Association ("TEA"), the largest teachers' association in the state (¶¶ 10–11), Plaintiff teachers challenge Tennessee's "prohibited concepts" law, codified in Tenn. Code Ann. § 49-6-1019 (2021) (the "Act") and Tenn. Comp. R. & Regs. § 0520-12-04-.01–.08 (2021) (the "Rules") (collectively, the "Ban"), as unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. They do so not to assert the right to teach students about specific subjects in particular ways, or because they are "nihilis[ts]," as Defendants suggest. (Br. 15). Rather, Plaintiffs challenge the Ban on its face and as applied because they cannot discern what they can teach without running afoul of the Ban, and the Ban threatens them with discipline, even loss of licensure, for guessing wrong. The Due Process Clause protects Plaintiffs from this dilemma, because "[i]n our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

Defendants' motion to dismiss fails to identify any deficiency in Plaintiffs' Complaint warranting dismissal. Contrary to Defendants' assertion, the Ban *has* been enforced, against an educator with 45 years of teaching experience, subjecting her to months of administrative proceedings for providing instruction about the novel *Dragonwings*, notwithstanding the Tennessee Department of Education's ("TDOE") prior approval of the novel, and its inclusion in her district's curriculum. (¶¶ 67–83). Plaintiffs and other educators across the state face an ongoing and substantial risk of *further* enforcement—a threat that is heightened because the Ban

---

[1] All citations to "¶" indicate citation to the Complaint (ECF No. 001).

1

empowers parents, school district employees, even minor students, to initiate proceedings against K-12 educators for purported violations of the Ban. (¶¶ 1, 4, 34, 65, 72, 84–98). TDOE promulgated the Rules implementing the Act, Defendant Commissioner of TDOE is charged with enforcing them, and members of the State Board of Education ("SBOE") are responsible for disciplining teachers for violating the Ban, including by revoking their teaching certificates. (¶¶ 17–18, 31). As a result, Plaintiffs have suffered, and continue to suffer, a cognizable injury that Defendants—and only Defendants—can redress. Plaintiffs have Article III standing to pursue their claim.

Defendants' improper reliance on facts outside—and in conflict with—the pleadings, as well as on inferences drawn in their favor (Br. 10–18), only serves to highlight the existence of factual disputes that cannot be decided at this stage of the proceedings and further confirms that Defendants' motion should be denied. Likewise, Defendants' dependence on a contrived and atextual interpretation of the Ban illustrates the Ban's incoherence and inherent, impermissible, subjectivity. Moreover, despite Defendants' efforts to rely on the Ban's safe-harbor provision, that equally vague and integral provision relies on a term that the Sixth Circuit has held "vests the decision-maker with an impermissible degree of discretion." *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998). The Complaint easily satisfies Rule 8's liberal notice pleading requirement, and it adequately alleges facial and as applied challenges to the Ban. Accordingly, the Court should deny Defendants' motion to dismiss.

## BACKGROUND

I.      **Passage of the Act and Promulgation of the Rules**

The Act was drafted and enacted with minimal debate in the waning days of the 2021 legislative session. (¶¶ 99–117). The Ban regulates every K-12 public-school teacher in

2

Tennessee (¶¶ 27, 43); empowers every student, parent, and school employee to identify purported violators within their district (¶¶ 34, 65); and threatens teachers with disciplinary action including loss of licensure (¶¶ 18, 35–36). Several potential interpretations of the Ban's impermissibly vague language conflict directly with state standards approved by Defendant SBOE and any reasonable understanding of a civil education. (¶¶ 8, 50–54). Despite the Act's sweeping ambit, the evidence proffered by the Act's sponsor to establish its need was vanishingly thin: a single email, claiming that a seven-year-old girl came home from school one day and told her mother, "I'm ashamed that I'm White." (¶¶ 103, 111–12).

That single email anecdote was the sole predicate for passage of a law, and the promulgation of implementing regulations (¶ 31), that have confounded teachers and conferred unbounded and entirely subjective enforcement authority on Defendants. The Ban purports to prevent teachers from "includ[ing] or promot[ing]" any of 14 "prohibited concepts" concerning race, sex, and gender (among other things) in any lesson, in any public school, anywhere in Tennessee, whether the audience consists of five- and six-year-old kindergartners or seventeen- and eighteen-year-old 12th graders. (¶¶ 27, 33). The list includes "concepts" that are seemingly inextricable from lessons that Tennessee educators are directed *by Defendants* to teach (¶¶ 47–54), and a catch-all provision that threatens discipline against Tennessee K-12 teachers who unintentionally offend their students, or their students' parents, by teaching lessons that touch upon race, sex, gender and other subjects (¶ 49).

The Ban's central prohibition is not its only unconstitutionally vague provision. The Ban contains a "safe harbor" provision—essential to the statutory and regulatory scheme—that purports to allow Plaintiffs and other educators to engage in the "impartial discussion of controversial aspects of history" in the classroom, without fear of discipline. (¶¶ 55–64). On its face, that provision is impermissibly vague, leaving educators at the mercy of Defendants'

3

subjective understanding of the terms "controversial" and "impartial." It "serve[s] only to add confusion and enhance the risk to Tennessee's public school educators." (¶ 64).

## II.      The Ban's Dramatic Impact on Plaintiffs

The Ban's impact on K-12 classrooms across Tennessee has been substantial. For example, Plaintiff Michael Stein, a high school English teacher and TEA member, fears that teaching *Plessy v. Ferguson* from a state-approved textbook will subject him to discipline under the Ban. (¶ 91). Several "prohibited concepts" are essential to *Plessy*'s reasoning, *see, e.g.*, Act § (a)(1), and the Ban's language provides no guidance to Mr. Stein about how he may permissibly discuss the case with his students. Plaintiff Roland Wilson has served as a choir director in Tennessee public schools for 22 years, and every year he includes in his class repertoire at least one song composed by enslaved people in the antebellum South, i.e., a "Spiritual." (¶ 88). Since the enactment of the Ban, Mr. Wilson fears that this practice violates the Ban because discussing the origin and meaning of Spirituals requires him to acknowledge the brutality of slavery and enslaved peoples' efforts to obtain freedom from white enslavers. (¶¶ 89–90). Plaintiffs Wilson and Stein both fear that students may feel uncomfortable or guilty during discussions of our nation's history of slavery and segregation, exposing them to the substantial threat of investigations and discipline under an unbounded and subjective "standard" of causing feelings of "division" or "resentment" under Act § (a)(10). (¶¶ 27, 49, 89, 91).

Plaintiffs Kathryn Vaughn and Rebecca Dickenson, who are public-school educators and TEA members, have first-hand knowledge of the hostility towards, and baseless accusations made against, teachers in Tennessee—sentiments that heighten the risk of confrontation between teachers and students, and dramatically increase the threat of enforcement under the Ban. (¶¶ 86, 96). At one political meeting in Tipton County, for example, Ms. Vaughn observed a woman read an excerpt from an approved textbook concerning Chinese immigrants, which the woman

4

described as "horrible" and "divisive." (¶ 86). Ms. Vaughn fears that the lessons she has taught

for years about Asian art and Chinese New Year will be similarly perceived, threatening her with

investigation and discipline under the essentially standardless provisions of the Ban. (*Id.*). Ms.

Dickenson, as head of her local TEA affiliate, has attended numerous meetings of the Blount

County School Board, where she has observed participants baselessly assert that Tennessee's

public-school teachers are "groomers" who subject students to sexually explicit material, and

lodge complaints about the school curriculum and the teaching of concepts perceived to be

controversial. (¶ 96). She fears that this vitriol directed at teachers, combined with the

subjective and ill-defined provisions of the Ban, creates a substantial risk that she will be

subjected to an enforcement proceeding under the Ban. (*Id.*). The Ban emerges from this

atmosphere of recrimination—the Act's sponsor suggested that educators are "useful idiots" in

thrall to "subversive factions" and "seditious charlatans" (¶ 110)—and channels it into a formal

administrative process that threatens educators' livelihoods and reputations.

**ARGUMENT**

**I.**      **Plaintiffs Have Standing to Challenge the Ban[2]**

     **A.**      **Plaintiffs Have Pleaded Injury in Fact**

     Plaintiffs allege facts demonstrating that they face a genuine and substantial risk of

enforcement under the Ban, and they have therefore established "injury in fact" for purposes of

Article III standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (holding

that injury in fact exists where "the threat of future enforcement of the [challenged statute is]

substantial"); *Barber v. Charter Twp. of Springfield, Mich.*, 31 F.4th 382, 391 (6th Cir. 2022)

(standing exists when there is a "substantial risk" of "future harm"). Binding authority makes

---

[2] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

5

clear that a party has standing to challenge a law where the *threat* of prosecution is, as here, "genuine" or "realistic," as opposed to theoretical or "chimerical." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("genuine threat of enforcement"); *Pennell v. San Jose*, 485 U.S. 1, 8 (1988) ("realistic danger of sustaining a direct injury"); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) ("past enforcement [of a statute] against the same conduct is good evidence that the threat of enforcement is not chimerical"). *Crawford v. Dep't of Treasury*, on which Defendants principally rely, is not to the contrary. (Br. 1, 6). In the phrase Defendants' draw from *Crawford*, the adjective "certain" modifies "threat," not "prosecution." *See* 868 F.3d at 455. In *Crawford*, unlike here, the plaintiffs faced *no* "credible *threat*" of prosecution because none of the plaintiffs alleged ownership of sufficient foreign assets to implicate the challenged reporting requirement. *See id.* at 458. Plaintiffs need not allege that their prosecution is "certain," only that there is a "credible threat of enforcement." *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). They have done so.

First, contrary to Defendants' assertion and consistent with Plaintiffs' well-pleaded allegations, the Ban *has* been enforced during its short existence. (*Compare* ¶¶ 67–83 (describing enforcement action) *with* Br. 1 (asserting incorrectly that the Ban "has never been enforced against any educator, ever"), 8 ("The State has neither enforced nor threatened to enforce the Act against Teachers.")). A parent alleged that Terri Bradshaw, a Tennessee public-school educator with 45 years of experience, violated at least four provisions of the Ban by

providing instruction to other teachers about the novel *Dragonwings*. (¶¶ 67–83).[3]  Ms. Bradshaw estimates that she spent more than 40 hours outside of work preparing to defend herself.  (¶ 78).  She was ultimately vindicated, but not before a months-long administrative proceeding, an interview by TDOE, and harm to her reputation, including from damaging social media posts.  (¶ 67).  Although *Dragonwings* was approved by TDOE and mandated by Ms. Bradshaw's district, at no time during those proceedings did any state actor suggest that the parent's complaint was impermissible, or that Ms. Bradshaw was an inappropriate party to defend decisions made by state and local officials.  (¶¶ 67–83).  These well-pleaded facts demonstrate that the risk of enforcement is genuine, not "chimerical."  *Russell*, 784 F.3d at 1049.

Second, as the proceeding against Ms. Bradshaw demonstrates, the threat of enforcement is increased dramatically because the Ban permits parents, other district employees, and even minor students, to initiate proceedings against educators.  (¶ 34 (citing Rules § .02(6) (defining "[e]ligible complainant"))).  The Ban does not require the complaining student, parent, or employee to allege that they were harmed by the inclusion of a "prohibited concept," or even that they (or their child) were in the classroom where the concept was allegedly "included."  Rules § .02(6).  Indeed, the Ban requires only a specified connection to the school *district* in which the challenged educator works.  *Id.*  As long as the complaint satisfies the technical requirements set forth in Rules § .05(6), the district "shall" determine whether the complaint is "substantiated," after which appeal may be taken by either party to the Department of Education.  (¶¶ 34 (citing

---

[3] Ms. Bradshaw's position as a district curricular instructor rather than a "classroom teacher" bolsters, rather than undermines, the threat of enforcement.  (Br. 6–7; ¶ 68).  Although Dragonwings was approved by the TDOE and adopted by Ms. Bradshaw's district, and although another employee of the district in fact taught the lesson in question to the child of the complainant, Ms. Bradshaw still faced an enforcement proceeding under the Ban.  (¶¶ 68, 74).  Ms. Bradshaw's experience demonstrates that every educator in Tennessee is a target of the Ban, no matter their job description.

7

Rules §§ .05(8)–(10)), 38 (citing Rules § .07(8)).  The threat of enforcement is "bolstered by the fact that authority to file a complaint . . . is not limited to a prosecutor or an agency . . . who are constrained by explicit guidelines or ethical obligations."  *Susan B. Anthony List*, 573 U.S. at 164; *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 769 F.3d 447, 452 (6th Cir. 2014) (holding that the fact that "any person—not just a prosecutor or state agency—may initiate enforcement of the Code" supported the plaintiff's standing).

Finally, Defendants' brief dispels any doubt about their intent to enforce the law. Although Defendants acknowledge their ability to disavow enforcement of the Ban (Br. 7), they enforced it against Ms. Bradshaw (¶¶ 67–83) and they do not disavow enforcement now. Further, Defendants acknowledge that such a refusal *supports* a party's Article III standing to challenge a law.  (Br. 6–7).  *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (holding the plaintiffs had pre-enforcement standing in part because "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (holding that the plaintiffs had pre-enforcement standing when "the State has not disavowed any intention of invoking the criminal penalty provision"); *McKay v. Federspiel*, 823 F.3d 862, 870 (6th Cir. 2016) (considering the defendants' disavowal as evidence that "any threat of enforcement against [the petitioner] or others is less immediate than [the petitioner] contends").  Defendants' refusal to disavow enforcement confirms the threat of enforcement.

*McKay* is not to the contrary.  (Br. 6).  The Sixth Circuit has explained that the "*McKay* factors are not exhaustive, nor must each be established."  *Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021); *Fischer*, 52 F.4th at 307–08 (explaining that the *McKay* factors are not "a laundry list," each of which must be "satisfied" to establish standing).  Here, the Ban's history of enforcement, the provision empowering students, parents, and employees to

8

initiate administrative proceedings, and Defendants' refusal to disavow enforcement all establish a substantial risk of enforcement and therefore Article III standing to challenge the Ban. *Online Merchants Guild,* 995 F.3d at 550, 552 (explaining that plaintiffs must show "some combination" of factors to prove a credible threat and to establish that enforcement is "far from imaginary or wholly speculative").

## B. Plaintiffs' Injury in Fact Is Fairly Traceable to Defendants

Plaintiffs' injuries are "fairly traceable" to Defendants. *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 715 (6th Cir. 2015); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The TDOE, of which Defendant Lizzette Gonzalez Reynolds is the head, is obligated to "implement[] the law [and] policies established by the general assembly or state board of education," including the Ban, Tenn. Code Ann. § 49-1-201(a), and TDOE promulgated the Rules implementing the Act (¶¶ 17, 31). Moreover, the Rules expressly provide that appeals from district-level decisions are to the TDOE, Rules §§ .05(10), .07, and the Commissioner herself must resolve all such appeals in writing within 60 days, Rules § .07(8)–(9). (¶¶ 17, 38). Consistent with the Rules, the Commissioner of the DOE issued findings resolving the appeal involving Ms. Bradshaw and *Dragonwings*. (¶ 80). Because TDOE and the Commissioner are "actively involved with administering" the Ban, including by "promulgat[ing] regulations implementing" it, Plaintiffs' injuries are fairly traceable to her. *Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015) (same); *Dumont v. Lyon*, 341 F. Supp. 3d 706, 722–24 (E.D. Mich. 2018) (holding the plaintiffs' alleged injury fairly traceable to a state department as "enablers of [the] conduct" that caused the alleged injury); *cf. Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1033 (6th Cir. 2022) (holding that the plaintiffs' injury was not fairly traceable to the defendants who had "no authority, much less a duty," to make the allegedly harmful determinations).

9

Similarly, Plaintiffs' injuries are fairly traceable to Defendant SBOE members because they promulgate and enforce their own disciplinary rules against teachers for violating the Ban. Under the Rules, violations of the Ban may result in "[d]isciplinary action against a teacher . . . in accordance with" SBOE rule 0520-02-03-.09. (¶¶ 18 (citing Rules § .05(10)(b)), 36). Under rule 0520-02-03-.09, the SBOE members have authority to impose discipline against teachers for violating any federal or state law—including the Ban—and can revoke, suspend, or refuse to renew a teacher's license. (¶¶ 18, 36). In other words, the SBOE members are directly responsible for determining how teachers who violate the Ban are disciplined. For this reason, the injury Plaintiffs have alleged—a substantial threat of enforcement of an unconstitutionally vague statute—is fairly traceable to both the Commissioner and the SBOE members.

### C. Plaintiffs Have Standing with Respect to Every Provision of the Act

Plaintiffs have alleged injury in fact resulting from the unconstitutional vagueness of each provision of the Ban, including its primary prohibition in Act § (a) and Rules § .03(1), and the "safe harbor" provisions in Act § (b) and Rules § .03(2). The two parts of the Ban, and their subparagraphs, are inextricably linked: the prefatory language of the safe harbor provision in Act § (b) and Rules § .03(2) refers directly to the primary prohibition in Act § (a) and Rules § .03(1) and purports to carve out exceptions to it. *See* Act § (b) ("Notwithstanding subsection (a). . ."), Rules § .03(2) ("Notwithstanding subsection .03(1) . . ."). Conversely, each of the 14 subparagraphs in the primary prohibition in Act § (a) and Rules § .03(1) are subject to, and purportedly limited by, the safe harbor provision in Act § (b) and Rules § .03(2). Moreover, Act § (a) and Rules § .03(1)'s vague prefatory language—"include or promote"—carries through to each of the 14 subparagraphs that depend on the prefatory clause for meaning. Plaintiffs have alleged an injury in fact with respect to the Ban in its entirety, and they therefore have standing to challenge the Ban as a whole.

10

Defendants' contrary argument relies principally on *Prime Media, Inc. v. Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007), and *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 171 (6th Cir. 2022), but neither case supports their position. (Br. 9). In both cases, the Sixth Circuit explained that "[t]he critical inquiry [for Article III standing] is whether the plaintiff can allege an injury *arising from the specific rule being challenged*, rather than an entirely separate rule that happens to appear in the same section of the municipal code." *Prime Media*, 485 F.3d at 35; *Colerain Twp.*, 51 F.4th at 171 ("[W]hen a plaintiff has been injured by one part of a law, the plaintiff cannot invoke that injury to challenge other parts of the law that have done nothing to the plaintiff."). Plaintiffs easily satisfy this standard by alleging injuries that result from each of the Ban's two, interrelated provisions. (¶¶ 40−44, 47−49, 55−47, 60−63). Plaintiffs have not challenged "entirely separate" provisions that were "merely . . . codified under the same heading," *Prime Media*, 485 F.3d at 351, so the Court should reject Defendants' argument.[4]

* * *

Plaintiffs have adequately alleged injury in fact caused by the Ban in its entirety and correctly identified Defendants as the proper parties for redress. Plaintiffs have standing to challenge the Ban.

## II. Plaintiffs Have Adequately Pleaded a Vagueness Challenge to the Ban

Defendants fail to identify any legal infirmity in Plaintiffs' vagueness challenge warranting dismissal. (Br. 10–18). Defendants misstate the legal standard applicable to facial vagueness challenges outside of the First Amendment, ignore precedent in their unconvincing effort to discern a standard from the Ban's subjective terminology, and rely on factual assertions

---

[4] Defendants incorrectly assert that Plaintiffs have failed to allege that Act § (a)(9) and Rules § .02(1)(i) of the Ban are unconstitutionally vague. (Br. 9). To the contrary, Plaintiffs allege that it is "impossible to discern what the Ban intends to prohibit" in that paragraph. (¶ 48).

11

beyond the Complaint, all without acknowledging the impossible challenge faced by educators subject to the Ban.

A.      Defendants Misstate the Standard Applicable to Facial Challenges

Defendants' attack on Plaintiffs' facial challenge rests on the argument, rejected by the Supreme Court, that Plaintiffs must show that the Ban is "vague in all applications" to survive Defendants' motion to dismiss.  (Br. 11).  To the contrary, the Supreme Court explained in *Johnson v. United States* that the Court's "*holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp."  576 U.S. 591, 602 (2015) (emphasis in original).  *Johnson* makes clear that "the . . . supposed requirement of vagueness in all applications is not a requirement at all, but a tautology: If [the Court] hold[s] a statute to be vague, it is vague in all its applications."  *Id.* at 603.  The Court subsequently reaffirmed *Johnson*'s holding in the context of a vagueness challenge to a civil provision in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 n.3 (2018).

The Sixth Circuit took the same approach in *Springfield Armory, Inc. v. Columbus*, rejecting the argument, made here by Defendants, "that a facial challenge cannot succeed simply because constitutionally-protected activity is not imperiled."  29 F.3d 250, 254 (6th Cir. 1994); *see also United States v. Davis*, 139 S. Ct. 2319, 2326 (2019) (discussing *Johnson* and *Dimaya*); *United States v. Cook*, 914 F.3d 545, 553 (7th Cir.), *judgment vacated on other grounds*, 140 S. Ct. 41 (2019) (explaining that *Johnson* "put[] to rest the notion . . . that a litigant must show that the statute in question is vague in all of its applications in order to successfully mount a facial challenge"); *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018) ("*Johnson* and *Dimaya* expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope.").  As another district court recently explained in considering a similar challenge to a "divisive concepts" law, *Johnson* and

12

its progeny make clear that the Supreme Court has "refused to adopt the view that 'a statute is void for vagueness only if it is vague in all its applications.'" *Loc. 8027, AFT-N.H., AFL-CIO v. Edelblut*, 2023 WL 171392, at *9 (D.N.H. Jan. 12, 2023) (quoting *Johnson*).

In any event, dismissal is unwarranted even if Plaintiffs are required to meet the "vague in all applications" standard. As alleged in the Complaint (¶¶ 3–4, 6–7, 48–49, 55–56), and described below, the Ban includes non-severable provisions that make it impossible to determine what conduct the Ban purports to prohibit, because "no standard of conduct is specified at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). Plaintiffs' challenge is cognizable because those non-severable parts of the Ban are "inherently standardless, [and] enforceable only on the exercise of an unlimited, and hence arbitrary, discretion vested in the state." *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001).

### B. Plaintiffs Have Adequately Pleaded a Facial Vagueness Challenge

Defendants' strained effort to explain the Ban by reference to hypothetical facts that are beyond the Complaint provides no basis to dismiss Plaintiffs' facial challenge. (Br. 12–15). In assessing Plaintiffs' challenge, the Court is relegated "to the words of the ordinance itself, to the interpretations . . . given to analogous statutes, and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." *Grayned v. Rockford*, 408 U.S. 104, 110 (1972). In assessing Plaintiffs' facial claim, "individual application facts do not matter" because "the claimed constitutional violation inheres in the terms of the [Ban], not its application." *Ezell v. Chicago*, 651 F.3d 684, 697−98 (7th Cir. 2011) (facially invalidating statute on Second Amendment grounds); *Barnett v. Raoul*, 2023 WL 3160285, at *2 (S.D. Ill. Apr. 28, 2023) ("[I]n a facial challenge, *lex ipsa loquitur*: the law speaks for itself."). In other words, what matters is whether the Ban's plain language provides Plaintiffs with notice of "what is required of them so they may act accordingly," and whether it is sufficiently precise "so that those enforcing the law

13

do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Defendants' motion fails to direct the Court to "statutory definitions, narrowing context, or settled legal meanings" that would clarify the Ban's obvious ambiguities*, Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010), or to acknowledge caselaw that is fatal to their argument.

### 1. The Impartiality Clause

The Court should begin its analysis with Act § (b)(2) and Rules § .03(2)(b)—the "Impartiality Clause"—which purports to permit the "impartial discussion of controversial aspects of history."[5] (¶¶ 56–59). The clause plays an outsized role in the Ban's statutory and regulatory scheme because it purports to describe what teachers *may* teach in the classroom without fear of discipline under the Ban. The centrality of the Impartiality Clause to the overall scheme is clear from the debate in the General Assembly, during which the Act's sponsor focused almost exclusively on that clause in defending the Act. (¶¶ 57–59, 113–14).

But rather than save the Ban, the Impartiality Clause singlehandedly dooms it. The Sixth Circuit has explained that the "term 'controversial' vests the decision-maker with an impermissible degree of discretion" when used in a statutory or regulatory scheme. *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998) (invalidating regulation restricting certain "controversial" bus advertisements). The Seventh Circuit came to the same conclusion in *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, in which the court rejected the idea that a statutory or regulatory scheme

---

[5] Defendants do not challenge Plaintiffs' allegations with respect to the other three clauses in the "safe harbor" provision, i.e., Act § (b)(1)(3), (4), and (d); and Rules § .03(2)(a), (c), and (d) (¶¶ 61–64), and they have therefore waived any such argument. *See Long v. Clarksville*, 2022 WL 17875858, at *7 n.7 (M.D. Tenn. Dec. 22, 2022) (Trauger, J.).

14

"that has as its touchstone a government official's subjective view that the speech is 'controversial' could ever pass constitutional muster." 767 F.2d 1225, 1230 (7th Cir. 1985).[6] Just as "[w]hat is contemptuous to one man may be a work of art to another," *Smith v. Goguen*, 415 U.S. 566, 573 (1974), an "aspect of history" that is "contentious, questionable," or "disputed" to one teacher, principal, school district, or Commissioner of Education will be beyond dispute to another. *Controversial*, Oxford English Dictionary, https://www.oed.com (last visited Oct. 26, 2023).

Defendants do not address the obvious and impermissible subjectivity embedded in the term "controversial" that has troubled the Sixth Circuit, and they do not even attempt to explain how the word "impartial," when combined with the term "controversial," could provide adequate notice to educators or meaningful limits on enforcement. Instead, in the absence of any plausible *legal* argument to support their motion, Defendants resort to *ad hominem* attacks, branding Plaintiffs as "nihilis[ts]" (Br. 15), and reach beyond the Complaint to urge dismissal based on disputed questions of fact. Defendants assert, for example, that "women's rights" are a "controversial aspect[] of history," although the Complaint does not make that assertion, and the

---

[6] *See also, e.g., Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670, 691 (E.D. Mich. 2012) (finding phrases "in good taste" and "aesthetic standards" unconstitutionally vague); *Aubrey v. Cincinnati*, 815 F. Supp. 1100, 1104 (S.D. Ohio 1993) (finding regulation barring banners not in "good taste" "leaves too much discretion in the decision maker without any standards for that decision maker to base his or her determination"); *Nat'l Abortion Fed'n v. Metro. Atlanta Rapid Transit Auth.*, 112 F. Supp. 2d 1320, 1327 (N.D. Ga. 2000) (holding term "public controversy" unconstitutionally vague).

plain text of the Ban does not require it.[7] (Br. 15). Defendants fail to offer any explanation of the Impartiality Clause that would provide the fair notice and reasoned enforcement guaranteed by the Due Process Clause of the Fourteenth Amendment.

Defendants' failure to identify any legal defect in Plaintiffs' allegations about the Impartiality Clause is alone fatal to their motion to dismiss Plaintiffs' facial claim. The safe harbor provision contains unconstitutionally vague language that obfuscates the scope of the Ban as a whole, and it is not severable from the Ban. Accordingly, even if *all other provisions* of the Ban were constitutionally sound—and they are not—Plaintiffs would still have stated a claim of facial invalidity under the Due Process Clause. *See Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 626 (6th Cir. 2018), *aff'd sub nom. Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019) ("Whether a portion of a state's statute is severable is determined by the law of that state."); *Gibson Cnty. Special School Dist. v. Palmer*, 691 S.W.2d 544, 551 (Tenn. 1985) (doctrine of elision is disfavored in Tennessee); *Bell v. Pulaski*, 184 S.W.2d 384, 386 (Tenn. 1945) ("[E]lision will not be sanctioned if the [unconstitutional] section of the Act . . . is in the nature of an exception or an exemption.").

### 2. The Central Prohibition

The indeterminacy of the Impartiality Clause is exacerbated by the impermissible vagueness of the Ban's central prohibition against "includ[ing] or "promot[ing]" the prohibited concepts, found in Act § (a) and Rules § .03(1). (¶¶ 40–46). It is true, as Defendants suggest,

---

[7] In any event, Defendants' factual assertions only serve to demonstrate the Ban's indeterminacy. Nothing in Ban's text supports Defendants' conclusion that slavery, "women's rights," the Holocaust, and the KKK's actions after the Civil War are "controversial aspects of history." Moreover, the suggestion that educators may only seek refuge in the Ban's safe harbor provision if, in Defendants' view, they discuss those topics "without favor to one side or another" (¶ 57) confirms what is obvious from the Ban's text: the scope of the Ban is whatever Defendants say it is.

that one meaning of the term "promote" concerns "advocacy."  (Br. 2 (asserting that Ban concerns only "advocacy"), 12 (suggesting that the term "promote" means to "further[]" or "foster[]")).  But, as the Supreme Court has explained, "promote" is "susceptible of multiple and wide-ranging meanings," which cannot be narrowed by the term's context in the Ban.  *United States v. Williams*, 553 U.S. 285, 294 (2008).  For example, "promote" can also mean "to increase . . . public awareness," *Promote*, Oxford English Dictionary, https://www.oed.com/ (last visited Oct. 26, 2023), such that even the mere *mention* of a prohibited concept—even for purposes of refuting or debunking it, and particularly to students who may be learning about it for the first time—would run afoul of the Ban.  (¶ 42).  In any event, the only context for the term "promote" is the word "include," which encompasses the word "promote," renders it superfluous, and undermines Defendants' assertion that the Ban is limited to "advocacy."  (Br. 1).  *See El Cenizo v. Texas*, 890 F.3d 164, 183−84 (5th Cir. 2018) (citing *Williams* and declining to employ cannon of *noscitur a sociis* where it would render vague term "superfluous or meaningless"); *see also Include*, Oxford English Dictionary, https://www.oed.com (last visited Oct. 26, 2023) (defining "include" to mean "to involve, imply; esp. (of a concept or term) to cover (another concept or term) within its scope, to encompass").  Defendants fail to offer an explanation of the Ban that makes sense of its central prohibition, or to identify a legal deficiency in Plaintiffs' facial claim warranting dismissal.

Nor do Defendants identify any deficiency in Plaintiffs' allegations that the impermissible vagueness of these key terms extends to each of the listed "prohibited concepts" in Act § (a)(1)–(14) and Rules § .03(1)(a)(n), or that several of the "prohibited concepts" are independently vague.  Defendants do not dispute, for example, that the scope of Act § (a)(10) and Rules § .03(1)(j) depends on the perception of students, parents, and other employees, not on

17

the conduct of educators.[8] (¶ 49; Br. 14). Moreover, Defendants ignore Plaintiffs' factual allegations that they cannot conform their conduct to the Ban because they cannot predict what subjects or statements will give rise to feelings of "division," or cause a parent, teacher, or other employee to feel "resentment." (¶¶ 49, 86, 94–95). *See Coates*, 402 U.S. at 614 (finding statute impermissibly vague because "[c]onduct that annoys some people does not annoy others"). Defendants' failure to acknowledge the "resentment" clause and the inherent subjectivity of Act § (a)(10) and Rules § .03(1)(j) confirms that it imposes no "standard of conduct . . . at all." *Id.*

Defendants' construction of the "promote division" clause in Act § (a)(10) and Rules § .03(1)(j) fares no better. Here, they reach beyond the Complaint to assert as a matter of fact that "certain" unspecified materials about the KKK may have the effect of "promot[ing] division of people based on race." (Br. 14). In urging the Court to adopt this factual assertion, Defendants also impermissibly omit the critical opening clause of the Ban: it purports to prohibit teachers from "*includ[ing] or promot[ing]* . . . [p]romoting division between" certain groups of people. (¶¶ 27, 49). Plaintiffs and other educators cannot discern a standard of conduct from that confused construction, and the Court should reject Defendants' effort to do so by ignoring critical parts of it. *See Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (noting "longstanding canon[] of statutory construction . . . that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant"). In any event, even if Defendants' hypothetical factual assertions were appropriate in connection with their motion to dismiss, and even if their understanding of this provision were consistent with the Ban's language, their argument would still provide no basis to dismiss Plaintiffs' claims. As the Court

_____

[8] Act § (a)(10) and Rules § .03(1)(j) purport to prohibit teachers from "includ[ing] or promot[ing] . . . promoting division between, or resentment of" various groups of people.

18

explained in *Johnson*, a law is not rendered constitutional merely because some conduct can be identified that "falls within the provision's grasp."  576 U.S. at 602.

Defendants dismiss Plaintiffs' allegations about Act § (a)(9)–(11) and Rules § .03(1)(i)–(k) as "hyperbole," but they identify no legal deficiency warranting dismissal.  (Br. 13).  Indeed, Defendants concede that the provisions are "inartful[ly]" drafted, and they fail to explain what the Ban *means* when, for example, it instructs educators that they may not "include or promote . . . ascribing" traits to particular classes of people, or "include or promote . . . promoting or advocating" the violent overthrow of the government.  (¶ 48).  Instead, Defendants attempt to defend the Ban by relying on facts not in the Complaint, asserting, for example, that the prohibited concept identified in Act § (a)(11) and Rules § .03(1)(k) "prohibit[s] material on 'white privilege.'"  (Br. 13).  Defendants' conclusory factual assertions are inappropriate at this stage of the case and provide no support for their motion to dismiss.

*     *     *

Defendants' impermissibly fact-bound arguments have no grounding in the allegations in the Complaint and do nothing to undermine Plaintiffs' well-pleaded facial challenge to the Ban.

### C.    Plaintiffs Have Adequately Pleaded an As Applied Challenge

Nor do Defendants provide legal support for their assertion that the Court should dismiss Plaintiffs' as applied challenge.  To the contrary, *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001), on which Defendants principally rely, was decided on a stipulated factual record following a guilty plea in a criminal case, not a motion to dismiss.  (Br. 15).  *United States v. Williams*, 553 U.S. 285 (2008), *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982), and *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees*, 411 F.3d 777 (6th Cir. 2005), all concern facial vagueness challenges, not as applied challenges, and they are therefore equally inapposite to Defendants' argument.  (Br. 15).

19

In urging the Court to dismiss Plaintiffs' as applied claims, Defendants highlight one of the Ban's principal defects: the absence of any scienter requirement to separate culpable from non-culpable conduct.  (¶¶ 44–46).  Defendants implicitly acknowledge that the Ban cannot survive Plaintiffs' challenge without a scienter requirement, so they create one from whole cloth.  (Br. 17).  The Rules provide that complaints brought under the Ban "shall be 'substantiated'"— after which a school "shall" take "remedial action," including "[d]isciplinary action" against an educator—if the educator acted "affirmatively and intentionally."  (¶¶ 35, 37 (citing Rules § .05(8)(b), (10)).  But as alleged in the Complaint, those terms do nothing to protect educators because their on-the-job conduct with respect to "course[s] of instruction, curricul[a,] . . . instructional program[s], [and] supplemental instructional materials" will *always* be "affirmative[] and intentional[]."  (¶¶ 43–46 (citing Rules §§ .03(1), .05(8)(b))).  As a result, the Ban "is little more than a trap for those who act in good faith."  *Peoples Rts. Org., Inc. v. Columbus*, 152 F.3d 522, 534 (6th Cir. 1998).

Defendants ignore the text of the Ban and assert that a "defendant" cannot be found liable under the Ban unless they "have awareness that [the purportedly offending] materials violate the Act."  (Br. 17).  For this proposition, Defendants do not cite *any* provision of the Act or the Rules because the Ban imposes no such limitation on its enforcement against educators.[9] Defendants instead rely on a case construing an entirely dissimilar Colorado statute, *see Counterman v. Colorado*, 600 U.S. 66 (2023) (construing Colo. Rev. Stat. § 18–3–602(1)(c)), a dissenting opinion concerning an equally dissimilar New Jersey statute, *see Wright v. New*

---

[9] The absence of any scienter requirement with respect to teachers is conspicuous given the scienter requirement applicable to school districts.  *Compare* Act § (c) (directing that state funds be withheld from districts for "knowing[]" violations) *with* Rules § .05(8)(b) (directing that complaint be substantiated if, inter alia, educator acted "affirmatively and intentionally").

20

*Jersey*, 469 U.S. 1146, 1151 n.5 (1985) (Brennan, J., dissenting) (discussing N.J. Stat. § 2C:39-5d), and a federal criminal prohibition on "drug paraphernalia," *Posters* 'N' *Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994). None of these cases support Defendants' assertion that the Ban is constitutional as applied because it has a scienter requirement. At most, they confirm that the Ban is unconstitutional in part because it does not.[10]

Further, Defendants mischaracterize Plaintiffs' factual allegations, fail to take them as true, and ignore Rule 8(a)(2)'s notice pleading requirements in urging the Court to dismiss the as applied claims brought by Plaintiffs Wilson, Stein, Dickenson, and McIntosh.[11] For example, contrary to Defendants' assertion, the Complaint alleges *why* Plaintiff Stein fears that discussing *Plessy v. Ferguson* with his students will subject him to discipline: *Plessy*'s reasoning relies on several "prohibited concepts," and the Ban's language provides Mr. Stein with no guidance about how he can teach the case without violating the Ban. (¶¶ 51–52, 91). Similarly, the Complaint does not allege merely that Plaintiff Stein assigns "young adult novels" to his students. (Br. 16). The Complaint alleges that Mr. Stein assigns "young adult novels [that] address[] *issues of race and gender*" (¶ 93)—issues that are implicated by the Ban's language (*see* Br. 3 (describing legislative purpose for the Act)).[12]

---

[10] *See also Nova Recs., Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir. 1983) ("A scienter requirement cannot eliminate vagueness . . . if it is satisfied by an 'intent' to do something that is in itself ambiguous."); *Richmond Med. Ctr. for Women v. Gilmore*, 55 F. Supp. 2d 441, 499 (E.D. Va. 1999), *aff'd*, 224 F.3d 337 (4th Cir. 2000) (same).

[11] Defendants do not assert that Plaintiff Kathryn Vaughn's as applied allegations are insufficient, and there is therefore no basis to dismiss her as applied claim. (Br. 15–18).

[12] Defendants do not discuss Plaintiff Stein's allegations concerning his "Article of the Week" assignment, and they therefore waive any argument that those allegations are insufficient to state an as applied claim. *See Long*, 2022 WL 17875858, at *7 n.7.

21

Indeed, Defendants acknowledge that issues of race implicate the Ban's central prohibition in the very next paragraph of their brief. They assert that Plaintiff Wilson can only discuss "the brutality of slavery and enslaved peoples' efforts to obtain freedom from white enslavers" if he discusses that "historical oppression" "impartial[ly]" under the safe harbor provision in Act § (b)(3) and Rule § .03(2)(c). (Br. 16). But here, again, their argument relies on the factual and highly subjective assertion that slavery is a "controversial aspect[] of history"—a conclusion that is not apparent from the text of the Ban—and they fail to explain how the safe harbor provision provides any guidance to Mr. Wilson, given that its scope is defined entirely by Defendants' subjective views. (¶ 113). Similarly, Plaintiff Dickenson's discussions of Rosa Parks and segregation implicate numerous "prohibited concepts," "includ[ing]" but not limited to the division/resentment provision in Act § (a)(10) and Rule § .03(1)(j), thus subjecting her to the impossibly vague and subjective safe harbor provisions in Act § (b)(2)−(3) and Rules § .03(2)(b)−(c). (¶¶ 94, 96).[13] The Complaint contains more than enough factual detail to support her allegations at this stage of the case. Finally, Defendants do not dispute that Plaintiff McIntosh is subject to the Ban as a substitute teacher, and in that position she will have less control over what she teaches on any given day; little, if any, opportunity to consider in advance whether a particular topic implicates the Ban; and less familiarity with the sensitivities of her students, their parents, and other teachers in the school than she had as a full-time classroom instructor. (¶ 98). Defendants do not have to "fish a gold coin from a bucket of mud" to discern the contested issues in Plaintiffs' as applied claims. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021).

---

[13] Defendants do not discuss Plaintiff Dickenson's allegations in paragraphs 95–96, and they have therefore waived any argument as to the sufficiency of those allegations. *See Long*, 2022 WL 17875858, at *7 n.7.

**III.     The Court Should Not Abstain from Resolving the Constitutionality of the Ban**

The Court should reject Defendants' invitation to err by abstaining under the *Pullman*

doctrine.  (Br. 18).  *See Railroad Comm'n of Tex. v. Pullman*, 312 U.S. 496 (1941).  That

doctrine "instructs courts to avoid exercising jurisdiction in cases involving an ambiguous state

statute that may be interpreted by state courts so as to eliminate, or at least alter materially" the

federal constitutional question.  *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019).  But it "is

an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy

properly before it," and it is appropriate only where a state statute is "fairly subject to an

interpretation [by a state court] which will render unnecessary or substantially modify the federal

constitutional question."  *Jones v. Coleman*, 848 F.3d 744, 749, 750, 751 (6th Cir. 2017).  Where

the statute at issue "is not obviously susceptible of a limiting construction, . . . it is the duty of the

federal court to exercise its properly invoked jurisdiction."  *Houston v. Hill*, 482 U.S. 451, 468

(1987).

There is no narrowing construction that will eliminate the need to resolve the

constitutionality of the Ban.  The Ban "is not open to one or a few interpretations, but to an

indefinite number," and "it is difficult to see how an abstract construction of the challenged

terms . . . in a declaratory judgment action could eliminate the vagueness from these terms."

*Baggett v. Bullitt*, 377 U.S. 360, 378 (1964); *Bd. of Airport Comm'rs of City of L.A. v. Jews for

Jesus, Inc.*, 482 U.S. 569, 575 (1987) (holding abstention was not appropriate where facial

invalidity could not be remedied by "anything less than a series of adjudications").  Moreover,

*Pullman* abstention "cannot be ordered simply to give state courts the first opportunity to

vindicate the federal claim."  *Zwickler v. Koota*, 389 U.S. 241, 251 (1967); *see also Fowler*, 924

F.3d at 255.  In any event, Defendants contend the statute is not vague (Br. 10) and there is

therefore no ambiguity—according to Defendants—for state courts to interpret. The Court should exercise jurisdiction and decline Defendants' invitation to abstain.

## IV. The Commissioner of Education Is a Proper Defendant

As described above, Defendants ignore the language of the Ban and its history of enforcement in asserting that Defendant Commissioner of Education should be dismissed. The Commissioner promulgated the Rules implementing the Act (¶ 31), Defendant Reynolds is the official "responsible for the implementation of law [and] policies established by the general assembly or the state board of education," (¶ 17 (quoting Tenn. Code Ann. § 49-1-201(a))), and her enforcement authority is central to the Ban. She must conduct an independent investigation of the alleged violation on appeal, Rules § .07(4); issue a written determination letter that constitutes the final decision on whether the teacher included or promoted a Prohibited Concept, *id.* § .07(8), (9); and authorize the local school district to take disciplinary action against the teacher, *id.* § .07(5)(a). (¶¶ 17, 38). The Commissioner also plays a central role in investigating local school districts for violations of the Ban, which may result in imposition of a corrective action plan and the withholding of state funds. (¶ 29).

Moreover, the *Ex parte Young* exception applies to the Commissioner's Eleventh Amendment immunity claim. A state official is a proper party to a suit if she is "clothed with some duty in regard to the enforcement of the laws of the state." *Ex parte Young*, 209 U.S. 123, 156 (1908). This requirement is satisfied where the official can "take legal or administrative actions against the plaintiff's interests." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015). As explained above, the Ban delegates specific enforcement duties to the Commissioner: she is the final arbiter of enforcement proceedings under the Ban, and she issues determination letters allowing the LEA to take disciplinary action against an educator. Commissioner Reynolds has the requisite enforcement connection to the challenged laws, and

24

she is not immune from the requested injunctive relief under the Eleventh Amendment. *See, e.g.*, *Buchanan v. Alexander*, 919 F.3d 847, 854 (5th Cir. 2019) ("The proper defendants to a facial challenge are the parties responsible for creating or enforcing the challenged law or policy.").

Finally, although a plaintiff cannot establish liability based on a theory of respondeat superior, "this does not automatically mean that a supervisor can never incur liability under § 1983." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995). A supervisor may be liable "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Doe v. Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). As explained above, the Commissioner is responsible for enforcement of the Ban and the Complaint alleges sufficient facts to demonstrate that she should remain a defendant.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Respectfully submitted,


/s/ *David R. Esquivel*                    /s/ *Richard L. Colbert*
David R. Esquivel (TN BPR # 021459)        Richard L. Colbert (TN BPR # 009397)
Jeremy A. Gunn (TN BPR # 039803)           KAY GRIFFIN EVANS, PLLC
BASS, BERRY & SIMS PLC                      222 2ⁿᵈ Ave. N., Suite 340M
150 Third Ave. S., Suite 2800              Nashville, TN 37201
Nashville, TN 37201                        Tel. 615-742-4800
Tel. 615-742-6200                          Fax 615-742-4801
Fax 615-742-6293                           rcolbert@kaygriffin.com
desquivel@bassberry.com
jeremy.gunn@bassberry.com                  *Counsel for Tennessee Education Association*

Carey R. Dunne *(pro hac vice)*
Kevin Trowel *(pro hac vice)*
Martha Reiser *(pro hac vice)*
FREE AND FAIR LITIGATION GROUP, INC.
266 W. 37ᵗʰ St., 20ᵗʰ Floor
New York, NY 10018
646-434-8604
carey@freeandfairlitigation.org
kevin@freeandfairlitigation.org
martha@freeandfairlitigation.org

Frances E. Bivens *(pro hac vice)*
Pascale Bibi *(pro hac vice)*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
212-450-4935
frances.bivens@davispolk.com
pascale.bibi@davispolk.com

*Counsel for Kathryn Vaughn, Roland
Wilson, Michael Stein, Rebecca Dickenson,
and Mary McIntosh*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, the undersigned filed the foregoing document using the Court's Electronic Court Filing system, which sent notice of the filing to the following counsel of record:

Ryan N. Henry
Brooke A. Huppenthal
Office of the Tennessee Attorney General
P. O. Box 20207
Nashville, TN 37202-0207
ryan.henry@ag.tn.gov
brooke.huppenthal@ag.tn.gov

*Counsel for Defendants*

/s/ *David R. Esquivel*
David R. Esquivel