# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE EDUCATION ASSOCIATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 3:23-cv-00751 |
| | ) | Judge Aleta A. Trauger |
| LIZZETTE GONZALEZ REYNOLDS, *in her official capacity as Commissioner of the Tennessee Department of Education*, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendants, the Commissioner of the Tennessee Department of Education, along with the Members of the Tennessee State Board of Education, by and through their undersigned attorneys, submit the following memorandum of law in support of their motion for summary judgment in this matter.

## INTRODUCTION

Summary judgment should be granted for Defendants. Plaintiffs Kathryn Vaughn, Roland Wilson, Michael Stein, Rebecca Dickenson and Mary McIntosh, along with Plaintiff Tennessee Education Association, assert a single count in their Complaint: that "Restrictions on course instruction that includes or promotes certain concepts related to race or sex," Tenn. Code Ann. § 49-6-1019 and Tenn. Comp. R. & Regs. 0520-12-04, are unconstitutionally vague.

Plaintiffs cannot establish standing to bring this claim. While this Court previously denied Defendants' motion to dismiss on standing grounds, Plaintiffs can no longer rely only

1

on their pleadings—they must present sufficient evidence to establish standing. And Plaintiffs cannot satisfy that burden. Neither Tenn. Code Ann. § 49-6-1019 (the "Prohibited Concepts Act" or the "Act") nor Tenn. Comp. R. & Regs. 0520-12-04 (the "Rules") (collectively, the "Prohibited Concepts Law" or the "Law") have ever been enforced against any Plaintiff; in fact, despite Plaintiffs' alleged fear of loss of license or other discipline, no such action has ever been initiated or taken against *any* educator in Tennessee since the enactment of the Act or the issuance of the Rules. The undisputed facts demonstrate that Plaintiffs cannot establish Article III standing because they cannot show that they face a certain, credible, or substantial threat of enforcement, nor can they show that the Act or the Rules have caused them to materially alter their behavior or to suffer a compliance burden.

Plaintiffs cannot establish that the Law is unconstitutionally vague—either facially or as-applied. While acknowledging the Court's earlier denial of Defendants' motion to dismiss, Plaintiffs cannot facially challenge the Law. Even if they could, Plaintiffs could not satisfy the stringent facial vagueness standard. Plaintiffs' as-applied challenge also fails because there is no evidence that the provisions of the Law will be applied to Plaintiffs.

## UNDISPUTED FACTS

Each of the Plaintiff Teachers is either a teacher or substitute teacher at a public school in the State of Tennessee. (Compl., D.E. 1 at ¶¶ 12-16.) The TEA is an organization comprising education professionals from more than 140 public school districts throughout Tennessee. (Compl., D.E. 1 at ¶ 10.) Those members include thousands of educators teaching kindergarten through 12th grade in Tennessee, as well as support staff, principals, administrators, and directors of schools. (Compl., D.E. 1, at ¶ 13; TEA's Resp. to Req. for Admission No. 10, Exhibit 11 to Motion.)

2

Plaintiff Rebecca Dickenson is a school librarian at Eagleton Elementary School in Blount County, Tennessee. (Compl., D.E. 1, at ¶ 15.) She fears that books in her library and lessons she has taught to students may violate the Act and Rules. (*Id.*) Before passage of the Act and enactment of the Rules, Dickenson had read to her students *Rosa*, a book about civil rights leader Rosa Parks. (Compl., D.E. 1, at ¶ 94.) She cannot recall whether she has read that book since the Law went into effect. (Dickenson Dep. at 51:12-52:9, Exhibit 2 to Motion.) She has, however, continued reading books about the Civil Rights Movement, as well as assigning research projects about its leaders. (*Id.* at 52:18-52:21; 56:1-56:8.) Dickenson has also continued assigning research projects related to non-Christian holidays. (*Id.* at 63:6-64:8.) Dickenson does not allege that she was directed to remove any lessons from her curriculum. (*See generally* Compl., D.E. 1.)

Despite her subjective fears, Dickenson has never been disciplined in relation to the Act and/or the Rules. (Dickenson Responses to Interrogatories, Resp. No. 20, Exhibit 1 to Motion; Dickenson Dep. at 15:15-15:18.) She has not even been the subject of a complaint for an alleged violation of the Law. (Dickenson Dep. at 16:7-20:7; 60:22-61:3; 63:25-64:8; 74:21-75:11.) Dickenson also does not allege that she has ever received any warning letters in connection with the Law. (*See generally* Compl., D.E. 1.)

Plaintiff Michael Stein works as an English teacher at Coffee County Central High School in Manchester, Tennessee. (Compl., D.E. 1, at ¶ 14.) He continues to teach the book *1984*, just as he did before the Prohibited Concepts Law took effect. (Stein Dep. 47:14-47:20, Exhibit 4 to Motion.) Because of the Law, he has stopped assigning the books *Refugee* and *The House on Mango Street*, and he no longer assigns Article of the Week assignments to his students. (*Id.* at 56:13-56:20; 63:17-63:22.) However, rather than bringing his concerns about the Article of the Week assignments to school leadership or his school district, Stein simply voluntarily decided to

3

remove these lessons. (*Id.* at 57:11-57:15.) Stein does not allege that he was directed to remove these lessons from his curriculum. (*See generally* Compl., D.E. 1.)

Stein has neither been disciplined in relation to the Act and/or Rules nor has he been the subject of a complaint for alleged violation of the Act and/or Rules. (Stein Responses to Interrogatories, Resp. No. 22, Exhibit 3 to Motion; Stein Dep. at 14:5-14:7; 65:14-65:16.) Additionally, Stein does not allege that he has ever received any warning letters in connection with the Law. (*See generally* Compl., D.E. 1.)

Plaintiff Kathryn Vaughn is a visual-arts teacher at Brighton Elementary School in Tipton County, where she teaches students in kindergarten through fifth grade. (Compl., D.E. 1, at ¶ 12.) Vaughn fears she may inadvertently violate the Act and/or Rules while providing classroom instruction. (*Id.*) As a result of the Prohibited Concepts Law, she has modified her lessons on Frida Kahlo, as well as the Chinese New Year. (Vaughn Dep. at 35:10-35:23; 38:9-38:20, Exhibit 5 to Motion.) Vaughn has also stopped teaching lessons about the immigrant experience as part of her elementary art instruction. (*Id.* at 41:22-41:25.) However, Vaughn was not told by anyone that she could not teach her lesson on Frida Kahlo. (*Id.* at 33:22-33:24.) Additionally, Vaughn did not bring her concerns about her lessons on the Chinese New Year or the immigrant experience to her school leadership or the school district. (*Id.* at 37:10-37:14; 42:1-42:3.) Vaughn does not allege that she was directed by her school or school district to remove these lessons from her curriculum. (*See generally* Compl.)

Despite Vaughn's subjective fears, she has never been the subject of a complaint for an alleged violation of the Act and/or Rules or been subject to any related discipline. (Vaughn Dep. at 13:25-14:3; 50:10-50:13.) Additionally, she does not allege that she has ever received any warning letters in connection with the Law. (*See generally* Compl., D.E. 1.)

4

Plaintiff Roland Wilson is a tenured Choir Director for Memphis-Shelby County Schools. (Compl., D.E. 1, at ¶ 13.) He also teaches music to high schoolers at Central High School in Memphis. (*Id.*) Wilson has not made any changes to his instruction since the Prohibited Concepts Law was enacted; he continues to include Spirituals—and the history behind them—as part of his class repertoire. (Wilson Dep. at 41:3-41:6; 41:12-41:15, Exhibit 9 to Motion.) Wilson did not consult with his school leadership or school district about whether Spirituals complied with the Law. (*Id.* 47:19-47:24.)

Wilson has been neither disciplined nor had any complaints lodged against him for alleged violations of the Act and/or Rules. (Wilson Responses to Interrogatories, Resp. No. 19, Exhibit 8 to Motion; Wilson Dep. at 14:21-14:23; 14:17-14:20.) Additionally, he has not had any adverse employment actions taken against him in relation to the Law. (*Id.* at 14:24-15:1.) Wilson also does not allege that he has ever received any warning letters in connection with the Act and/or Rules. (*See generally* Compl., D.E. 1.)

Plaintiff Mary McIntosh is a substitute teacher employed by Memphis-Shelby County Schools. (Compl., D.E. 1, at ¶ 16.) She was previously a social-studies teacher at Central High School in Memphis, having retired in 2023. (*Id.*) Because of the Act and Rules, McIntosh decided to exclude from her classroom curriculum part of a unit called "We and They," including the documentary "A Class Divided" and the documentary series "Race: the Power of Illusion." (McIntosh Dep. at 31:10-31:21, attached as Exhibit 7 to Motion.) However, she did not seek guidance from anyone in her school or the school district before excluding these documentaries, and she does not allege that she was directed to remove these lessons from her curriculum. (*Id.* at 34:2-34:6; 35:18-35:21; *see generally* Compl., D.E. 1.) McIntosh also decided not to teach a unit

concerning the novel *Brown Girl Dreaming*. (*Id.* at 41:8-41:25.) But McIntosh also does not allege that she was directed to refrain from teaching this unit. (*See generally* Compl., D.E. 1.)

Despite claiming that she cannot determine what topics she is allowed to discuss in the classroom, McIntosh has not been the subject of any complaints concerning the Law. (McIntosh Dep. at 28:10-28:14.) Additionally, she has neither been subject to any discipline in relation to the Act and/or Rules nor had any adverse employment action taken against her. (McIntosh Responses to Interrogatories, Resp. No. 19, Exhibit 6 to Motion; McIntosh Dep. at 28:15-28:18; 28:19-28:21.) Further, McIntosh does not allege that she has ever received any warning letters in connection with the Act and/or Rules. (*See generally* Compl., D.E. 1.)

Since the Act and the Rules took effect nearly four years ago, the Tennessee State Board of Education has not received any reports from local education agencies and/or public charter schools of a teacher violating the Act and/or the Rules from May 2021 through February 18, 2025. (Decl. of Dr. Sara H. Morrison, ¶ 6, Exhibit 10 to Motion.) Additionally, no teacher has had adverse action taken against their license by the Tennessee State Board of Education for violating the Act and/or the Rules from May 2021 through February 18, 2005. (*Id.* at ¶ 7.) Relatedly, the TEA has not provided legal representation to any teacher for any action against their license due to a violation of Tenn. Code Ann. § 49-6-1019, nor has it provided legal representation to any teacher terminated by a school district or local education agency due to a violation of the Act. (TEA's Resp. to Req. for Admission Nos. 11 and 12, Exhibit 11 to Motion.)

## LEGAL STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thacker v. Ethicon, Inc.,* 47 F.4th 451, 458 (6th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).

6

Where "the evidence is such that a reasonable jury could return a verdict for the non-moving party," there is a genuine dispute of a material fact. *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016)).

"The moving party is entitled to summary judgment when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020). In order to defeat summary judgment, "the non-moving party must show that there is more than some metaphysical doubt as to material facts . . . The mere existence of a scintilla of evidence in support of the non-moving party does not establish a genuine issue of material fact." *Id.*

## ARGUMENT

### I.      Plaintiffs Lack Standing to Challenge the Prohibited Concepts Law.

Plaintiffs bear the burden of establishing the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990); *Warth v. Seldin,* 422 U.S. 490, 508 (1975)). Such elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* They therefore "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* That is, at the summary-judgment stage "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" to establish standing. *Lujan*, 504 U.S. at 561 (citing Fed. Rule Civ. P. 56(e)).

7

Plaintiffs cannot satisfy that burden. Plaintiff Teachers' evidence is not sufficient to establish standing, even when viewed in the light most favorable to them. And Plaintiff TEA's associational standing depends on Plaintiff Teachers' standing.

## A. Plaintiff Teachers Cannot Establish Standing for their Pre-enforcement Challenge.

"The irreducible constitutional minimum of standing" contains three requirements: injury in fact, causation, and redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 10 (1998). In short, a plaintiff must prove "an injury in fact . . . fairly traceable to the challenged conduct of the defendant . . . that is likely to be redressed by the requested relief." *FEC v. Cruz*, 142 S. Ct. 1638, 1646 (2022). To prove an injury in fact, a plaintiff must show that he has suffered a harm which is "concrete and actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (internal quotations omitted). The injury to the plaintiff "must be concrete in both a qualitative and temporal sense" and must be "distinct and palpable." *Whitmore*, 495 U.S. at 155. In other words, it must be "more than an injury to a cognizable interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734 (1972)).

The injury-in-fact requirement does not mean that a plaintiff must await actual enforcement of a law before having standing to challenge it. But to mount a pre-enforcement challenge, a plaintiff must prove "an intention to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" some provision of the Act. *Crawford v. Dep't of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (quotations omitted). The plaintiff must also prove "a *certain* threat of prosecution" if he or she were to engage in the prohibited conduct. *Id.* at 455.

Courts do not assume that every breach of the law will result in prosecution. *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016). As the Sixth Circuit explained in a recent decision,

8

"pre-enforcement review is permitted only when "the plaintiff's intention generates a '*certainly impending*' threat of prosecution[.]" *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (quoting *Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 454 (6th Cir. 2017)). Defendants recognize that in denying their motion to dismiss, this Court observed it was likely that *Crawford* "actually amounted to a repudiation of the long line of caselaw recognizing standing based on, for example, a 'substantial probability' or 'credible threat' of enforcement." (Mem., D.E. 58, at 25.) But especially given that *not one* teacher in Tennessee has been disciplined, let alone been reported to the Tennessee State Board of Education, for violating the Prohibited Concepts Law since its enactment in 2021, Plaintiff Teachers cannot establish a "credible threat" or "substantial probability" of enforcement, let alone a "certainly impending" threat.

The Sixth Circuit routinely applies the "*McKay* factors" to evaluate threats of enforcement. *Friends of George's*, 108 F.4th at 439 (citing *McKay*, 823 F.3d at 868–69); *see Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021). Applying the following *McKay* factors to the evidence in this case leads to the conclusion that Plaintiff Teachers cannot establish any credible threat of enforcement of the Law against them: "(1) 'a history of past enforcement against the plaintiffs or others'; (2) 'enforcement warning letters sent to the plaintiffs regarding their specific conduct'; (3) 'an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action'; and (4) the 'defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'" *Id.* (quoting *McKay*, 823 F.3d at 869).

*No History of Past Enforcement.* "A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). Again, though, Plaintiff Teachers have not been subject

9

to any enforcement related to the Act (Exhibit 1 at No. 20; Exhibit 2 at 15:15-15:18; Exhibit 3 at No. 22; Exhibit 4 at 14:5-14:7; Exhibit 5 at 13:25-14:3; Exhibit 6 at No. 19; Exhibit 7 at 28:15-28:18; Exhibit 8 at No. 19; Exhibit 9 at 14:21-14:23; Exhibit 10 at ¶ 7.).  Indeed, the evidence shows that not a single teacher in Tennessee has been disciplined for violating the Prohibited Concepts Law.  (Exhibit 10 at ¶ 7.)  And no teacher has even been reported to the Board of Education for violating the Law.  (Exhibit 10 at ¶ 6.)  This objective lack of past enforcement against teachers weighs squarely against Plaintiff Teachers' standing argument.

Defendants acknowledge that Plaintiff Teachers have alleged and expressed a fear of potential enforcement.  (Compl., D.E. 1, at ¶¶ 12, 15.)  Ultimately, though, the "inquiry distills to whether 'surrounding factual circumstances' plausibly suggest a *credible* fear of enforcement." *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 848 (6th Cir. 2024) (referencing *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034 (6th Cir. 2022) (emphasis added).  A fear of enforcement is most credible when the law at issue has previously been enforced against the same conduct.  *Id.*  Here, however, the Law has *not* been previously enforced against the same conduct.

*No Warning Letters.*  The undisputed facts also show that Plaintiff Teachers have never received any warning letters in connection with the Prohibited Concepts Act.  When specifically asked whether there had been any complaints made against them, each of the Plaintiff Teachers testified that there had not been.  (Exhibit 2 at 16:7-20:7, 60:22-61:3, 63:25-64:8, 74:21-75:11; Exhibit 4 at 65:14-65:16; Exhibit 5 at 50:10-50:13; Exhibit 7 at 28:10-28:14; Exhibit 9 at 14:17-14:20.)  And none of the Plaintiff Teachers has even alleged receiving warning letters as it relates to the Prohibited Concepts Law.  (*See generally* Compl. D.E. 1.)

10

For those reasons, the Plaintiff Teachers' claims are not ripe either. Their claims "depend[] on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam). In *Carman v. Yellen*, the Sixth Circuit explained that it could not invalidate a law "based on scenarios that may never come to pass." 112 F.4th 386, 402 (6th Cir. 2024). Just as in *Carman*, the Plaintiffs Teachers cannot "point[] . . . to a case when a preenforcement-facial-vagueness challenge was ripe." *Id.* That's because vagueness "cases benefit from factual development and applications of statutory provisions to particular scenarios." *Id.* That has not happened here. Thus, the Plaintiff Teachers' vagueness claims rest wholly on hypotheticals. *See id.* While *Carman* dealt with prudential ripeness concerning the lack of implementing rules accompanying that statute, the Court nonetheless "explain[ed] why plaintiffs' arguments concerning ripeness more generally d[id] not call for a different result." *Id.* at 411 n.3. And that reasoning applies here too.

By any metric, the Plaintiff Teachers have not been threatened with enforcement—a requisite element for ripeness. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007) (explaining that the constitutional elements of ripeness include *inter alia* that a plaintiff "is threatened with 'imminent' injury in fact"). And the "threat of future enforcement" must be "substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (citation omitted). Plaintiffs have not demonstrated any threat of future enforcement, much less a substantial one. Because the Plaintiff Teachers' claims force the Court to "wad[e] into the world of the hypothetical," *Carman*, 112 F.4th at 402, they are not ripe.

*No Attributes Making Enforcement Easy.* The Act also poses no unique enforcement threat against Plaintiff Teachers. While the Rules allow certain members of the public to file a complaint

prompting an investigation by the LEA,[1] enforcement requires action by the LEA and implicates a multi-step review process. The Rules provide that any determination by the LEA may be appealed and adjudicated by the Department of Education in certain circumstances. Tenn. Comp. R. & Regs. 0520-12-04-.05(2), (7), and (8); Tenn. Comp. R. & Regs. 0520-12-04-.07. In other words, the "universe of potential" enforcers—as opposed to initial complainants—is thus limited to "[local and] state officials who are constrained by . . . ethical obligations." *Susan B. Anthony List*, 573 U.S. at 164. Only after a thorough investigation by local officials, and subject to a review and appeal process by additional state officials, can enforcement occur. Tenn. Comp. R. & Regs. 0520-12-04-.05(10); Tenn. Comp. R. & Regs. 0520-12-04-.07(11).

In cases where there has been no prior enforcement, and where a defendant generally does not initiate enforcement on its own but rather in response to citizen complaints, the Sixth Circuit evaluates the credibility of enforcement based on two questions: "(1) [h]ow likely is anyone to file a complaint against a Plaintiff for its conduct, and (2) if such a complaint were filed, what is the likelihood that Defendants' actions in response would cause a cognizable injury?" *Christian Healthcare Centers*, 117 F.4th at 852. Here, particularly where the undisputed facts unequivocally show that there has been no past enforcement against any teacher, Plaintiff Teachers cannot demonstrate any substantial likelihood of a complaint being filed against them, or that the filing of such a complaint would lead to a cognizable injury. *See* Exhibit 10 at ¶ 7; *Christian Healthcare Centers,* 117 F.4th at 848.

*Disavowal of Enforcement.* Finally, there has been no "refusal to disavow enforcement of the challenged statute against" Plaintiff Teachers. *Online Merchs.*, 995 F.3d at 550 (quotations

---

[1] Under the Rules, an "'eligible complainant' means a current student of the LEA or public charter school in which the allegation(s) arose, a parent of a current student . . . , or a current employee . . . ." Tenn. Comp. R. & Regs. 0520-12-04-.02(6).

omitted).  Because Plaintiff Teachers have not identified any future intended instruction that may violate the Act, it is not necessary to disavow enforcement.

**B.  Plaintiff Teachers Cannot Show any Alteration of Behavior or Compliance Burden Sufficient to Establish Standing.**

In denying Defendants' motion to dismiss, this Court observed that a plaintiff can demonstrate an injury in fact for standing purposes by showing that a challenged law forced him to materially alter his behavior, or to incur costly, self-executing compliance burdens.  (Mem., D.E. 58, at 27 (citing, *inter alia*, *Clements v. Fashing*, 457 U.S. 957, 962 (1982); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)).  As discussed above, though, at the summary-judgment stage Plaintiffs must present specific facts to establish standing, and the evidence shows that Plaintiff Teachers cannot establish any material alteration of their behavior or their incurrence of costly compliance burdens as a result of the Prohibited Concepts Law.

In any event, Plaintiff Teachers cannot create standing through self-censorship, *i.e.*, the voluntary revision of lesson plans.  Put another way, Plaintiff Teachers "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (2013); *see also Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (explaining that self-censoring behavior does not create standing).  Plaintiff Teachers were not asked, let alone directed, to change their lesson plans. Thus, any curriculum revisions constitute self-censorship "based on . . . fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 at 416.  Because standing cannot be manufactured, Plaintiff Teachers do not have standing.

The voluntary revision of lesson plans, to the extent that there were *any* revisions to lesson plans, does not constitute a forced, *material* alteration of behavior and thus does not constitute an injury in fact.  According to the Plaintiff Teachers themselves, very little curriculum was changed

13

following the enactment of the Law. Plaintiff Vaughn, for example, merely modified the Frida Kahlo and Chinese New Year lessons and decided to cease teaching the "immigrant experience" as part of her elementary art curriculum. And no one told her that she could not teach her Frida Kahlo lesson. (Vaughn Dep. at 33:22-33:24, Exhibit 5 to Motion.) Nor did she bring her concerns about teaching these lessons to anyone within her school or school district. (*Id.* at 34:10-34:18; 37:10-37:14; 42:1-42:3.) Notably, Vaughn does not even allege that she was directed to remove these lessons. (*See generally* Compl., D.E. 1.) Vaughn's voluntary revisions to her lesson plans cannot meet the requirement of a concrete, or an actual or imminent, injury. *See Whitmore*, 495 U.S. at 155.

Likewise, Plaintiff Stein's decision to discontinue teaching Article of the Week assignments and assigning *Refugee* or *The House on Mango Street* to his students does not constitute a "concrete," "distinct," or "palpable" injury. Stein also removed the Article of the Week assignments from his curriculum without first bringing his concerns to school leadership or the school district. (Stein Dep. 57:11-57:15, Exhibit 4 to Motion.) And Stein also does not allege that he was directed by his school or school district to remove the Article of the Week assignment from his curriculum. (*See generally* Compl., D.E. 1.) In short, neither Stein, Vaughn, nor any other Plaintiff Teacher can establish that the Act forced them to materially alter their behavior.

Nor did Plaintiff Teachers incur "costly, self-executing compliance burdens" as a result of the Act. *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). As discussed, some of the Plaintiff Teachers decided on their own to remove some lessons from their curricula. However, there were no costs associated with these decisions. In *Crane v. Napolitano*, the Northern District of Texas found that the burden of compliance imposed on the plaintiffs (ICE agents) did not constitute an injury-in-fact as required to find constitutional standing. 920 F. Supp. 2d 724, 737

14

(N.D. Tex. 2013), *aff'd sub nom. Crane v. Johnson,* 783 F.3d 244 (5th Cir. 2015). There, the plaintiffs argued that they had standing by virtue of their having "alter[ed] their conduct to conform" to a directive issued to their agency. *Id.* The defendants countered that "a government employee responsible for carrying out an agency policy does not have standing to challenge that policy merely because of work responsibilities related to that policy." *Id.* In finding that the plaintiffs lacked standing, the court reasoned that the plaintiffs would not "suffer any financial burden or harm to their personal property interests by complying" with the agency directive. *Id.* at 737-38. Here, Plaintiff Teachers have likewise not suffered any financial burden or harm to their property interests by acting in response to the Law.

In sum, the undisputed facts do not support a finding of standing for Plaintiff Teachers. Plaintiff Teachers simply cannot establish any credible threat of enforcement under the Law, nor can they establish any material alteration in their behavior or costly, self-executing compliance burden resulting from the Law. Any changes Plaintiff Teachers made to their lesson plans amount to self-censorship, and they cannot manufacture standing through their voluntary acts.

### C.     Plaintiff TEA Cannot Establish Associational Standing.

Plaintiff TEA's standing to sue relies entirely on its association with some Plaintiff Teachers. (Compl., D.E. 1, at ¶¶ 10, 11.) Because Plaintiff Teachers lack standing to challenge the Law, so too does the TEA.

"[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Just as an individual plaintiff "must demonstrate standing for each claim" asserted and "for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), an association relying on its members for standing purposes must make the same showings. *See Summers v. Earth Island*

*Inst.*, 555 U.S. 488, 493 (2009) (explaining that an association must "establish[ ] that at least one identified member had suffered or would suffer harm").

An association has standing to sue on its members' behalf "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)); *see Cleveland Branch, N.A.A.C.P. v. City of Parma, OH,* 263 F.3d 513, 524 (6th Cir. 2001); *Waskul v. Washtenaw Cnty. Cmty. Mental Health,* 900 F.3d 250, 254-55 (6th Cir. 2018). An association, however, cannot sue on behalf of some "unknown member" and must instead "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Association of American Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021).

As the Supreme Court has held, an injury-in-fact determination requires that the plaintiff himself be "among the injured." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) (quoting *Sierra Club,* 405 U.S. at 734). An association's having a "special interest in the subject" is not enough; instead, an association must demonstrate that its members are "directly affected" by the challenged law. *Id.* (explaining that to survive a motion for summary judgment, the organizations were required to "submit affidavits or other evidence showing, through specific facts" that one or more of their members would be directly affected).

Plaintiffs have failed to offer specific facts establishing how the Law "directly affects" any member of the TEA. Plaintiff Teachers Vaughn, Stein, and Dickenson are the only TEA members identified by Plaintiff TEA. (Compl., D.E. 1, at ¶¶ 12, 14, and 15.) And for all the reasons

16

discussed above, Plaintiff Teachers cannot establish their own standing. It necessarily follows that the TEA cannot establish its associational standing.

## II.     Plaintiffs' Vagueness Claims Fail as a Matter of Law.

Even if Plaintiffs have standing to challenge the Act, their vagueness claims fail on the merits for three reasons. First, Plaintiffs have no cognizable facial vagueness claim. Second, even if Plaintiffs could bring a facial challenge, they cannot show the Act is impermissibly vague in all its applications, as they must. And finally, Plaintiffs lack the requisite facts to establish the law is unconstitutionally vague as applied to them.

### A.  Plaintiffs Cannot Facially Challenge the Prohibited Concepts Act.

Plaintiffs' facial vagueness challenge fails out of the gate. Courts, including the Sixth Circuit, have long held that plaintiffs may not challenge a law on its face, unless their claim involves First Amendment rights or the challenged law imposes criminal sanctions. *See Belle Maer Harbor v. Charter Tp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999) (collecting cases); *New York v. Ferber*, 458 U.S. 747, 767-69 (1982). Neither is true here. (*See* Mem., D.E. 58, at 33.) So Plaintiffs can only challenge the Act "as applied to the facts of [their] case[s]." *See Johnson v. Morales*, 946 F.3d 911, 928-29 (6th Cir. 2020). And their facial vagueness claims should be dismissed.

This Court rejected that argument at the motion-to-dismiss stage as "affirmatively foreclosed by *Sessions v. Dimaya*, 584 U.S. 148, 174 (2018)." (Mem., D.E. 58, at 46.) But the Sixth Circuit disagrees as evidenced by its continued rejection of facial vagueness challenges after *Dimaya*. In *Morales*, for example, an opinion that issued after *Dimaya*, the court held that a plaintiff's facial challenge to a business-license-suspension ordinance could not proceed because she did not claim the ordinance implicated her First Amendment rights or imposed criminal

17

sanctions.  *See* 946 F.3d at 928-29.  And that is consistent with *Dimaya*'s own explanation that removal cases like that one involve a "drastic" penalty—often "lifelong 'banishment or exile'"—thus raising similar vagueness concerns to criminal cases.  *See* 584 U.S. at 156-57 (citation omitted).  So *Dimaya* poses no barrier to dismissing Plaintiffs' facial vagueness claims.

**B.  Plaintiffs could not satisfy the stringent facial vagueness standard.**

Even if Plaintiffs' facial vagueness claim could proceed, it would not last long under the proper standard.  As here, where a challenged law "implicates no constitutionally protected conduct," the court "should uphold the challenge only" if the law is "impermissibly vague in all of its applications."  *See Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982); *accord Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (explaining that in such cases, a plaintiff must "establish that no set of circumstances exists under which the [law] would be valid").  Courts thus hold, for example, that a law is not "'impermissibly vague in all of its applications'" if it applies to the challenger because that means there is at least one "clear[]" application, defeating facial vagueness.  *See, e.g.*, *Dade*, 802 F. App'x at 885-86 (quoting *Hoffman*, 455 U.S. at 497).  Applying a lighter standard "would amount to a judicial trespass—a court's striking of a law in all of its applications even though the legislature has the prerogative and presumed objective to regulate some of them."  *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009).

Plaintiffs cannot meet this high standard.  Plaintiffs attack several provisions of the Act and the Rules as impermissibly vague.[2]  But Plaintiffs cannot plausibly claim these provisions are

---

[2] Plaintiffs argue the following provisions of the Act and its implementing regulations are unconstitutionally vague: the Act's central prohibition on "includ[ing] or promot[ing]" prohibited concepts (Tenn. Code Ann. § 49-6-1019(a)); the implementing rules' direction that a complaint may be substantiated only if the complained of individual acted "affirmatively and intentionally" (Tenn. Comp. R. & Regs. 0520-12-04-.05(8)); prohibited concepts provisions (a)(9) through (11); prohibited concepts provision (a)(1)'s use of "division between, or resentment of"); the "safe harbor" for the "impartial" discussion of "controversial" history (Tenn. Code Ann. § 49-6-

18

vague in every application. Despite arguing the term "include" is impermissibly vague, for example, they allege that "Tennessee's public school educators cannot teach" a list of specified subjects without "includ[ing]" prohibited concepts. (*See* Compl. ¶¶ 42, 51-53, D.E. 1.) So Plaintiffs understand "include" to have a meaning; they just think it is too broad. Plaintiffs also admit the Act may be understood to protect the usage of certain materials in the classroom. (*See, e.g.*, Compl. ¶¶ 62, 63 (citing Tenn. Code Ann. § 49-6-1019(b)(1), (4))). They just argue these provisions provide insufficient notice of what teachers may say about those materials. In fact, as Defendants explained in their motion to dismiss brief, each of the challenged provisions has at least some clear applications. (*See* Mot. to Dismiss Br., D.E. 42, at 12- 15, 17.) That defeats a facial vagueness challenge under *Village of Hoffman*'s stringent standard. *See Vill. of Hoffman*, 455 U.S. at 495; *see also NetChoice*, 603 U.S. at 723. Indulging Plaintiffs' claims would thus trespass impermissibly on Tennessee's legitimate regulatory power. *See Connection Distrib. Co.*, 557 F.3d at 335.

This Court disagreed at the motion to dismiss stage, primarily because it read the Supreme Court to have "expressly rejected" *Hoffman*'s test in *Johnson v. United States*, 576 U.S. 591 (2015). (*See* Mem., D.E. 58, at 40-41.) But the U.S. Supreme Court, as well as the Sixth Circuit and other federal appellate courts, have continued to embrace *Hoffman*'s "very high bar" after *Johnson*. *See, e.g.*, *NetChoice*, 603 U.S. at 723 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)'s indistinguishable test); *see also Dade v. Baldwin*, 802 F. App'x 878, 885-86 (6th Cir. 2020). As the *NetChoice* Court cautioned, "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *NetChoice*, 603

---

1019(b)(2)); the "safe harbor" for the "impartial" instruction on historic oppression of certain groups (id. § (b)(3)); and the provision for permissible usage of certain instructional material. Compl. ¶¶ 41-42, 45, 47-49, 55-56, 62-63.

U.S. at 723 (quoting *Washington State Grange*, 552 U.S. at 451) (internal quotations omitted). The Supreme Court "has therefore made facial challenges hard to win." *Id.*

And treating *Johnson* and its follow-on cases as a deviation from the normal vagueness rule makes sense as the Second Circuit has explained. *Johnson* did "not call into 'doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to *real-world conduct*.'" *United States v. Requena*, 980 F.3d 30, 42 (2d Cir. 2020) (quoting *Johnson*, 576 U.S. at 604). In fact, *Johnson* recognized that "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." *Id.* (quoting *Johnson*, 576 U.S. at 604) (alteration in original). Rather, *Johnson* involved the "exceptional circumstance[]" of a qualitative standard's "application to a 'judge-imagined abstraction'"— namely, whether a defendant's offense was a "violent felony" based on the offense's legal elements, rather than the defendant's actual conduct, under the judge-made "categorical approach." *Id.* (citations omitted); *see also Johnson*, 576 U.S. at 596. And it was that "conspir[acy]" of a qualitative standard and an "idealized ordinary case" that rendered the challenged provision there unconstitutionally vague. *Id.* (quoting *Johnson*, 576 U.S. at 604). No such conspiracy exists here.

The Court also disagreed with Defendants' application of *Hoffman*'s standard, arguing the rule cannot be that a single permissible application saves a challenged enactment from vagueness. (Mem., D.E. 58, 41-44.) But the Court did not say what standard applies if not *Hoffman*'s. Rather, it seemed to consider whether the challenged terms, viewed in the "abstract," were "fundamentally indeterminate." *See id.* at 44. And even under the heightened standard *NetChoice* applied to a facial suit based on the First Amendment, the Court could not hold the Act impermissibly vague without finding that its "unconstitutional applications substantially outweigh its constitutional ones." 603 U.S. at 724. Doing so would require "explor[ing] the [Act's] full range of

20

applications—the constitutionally impermissible and permissible both," *id.* at 726—not examining the Act divorced from its applications. That is a "still rigorous standard" that Plaintiffs cannot pass. *See id.* at 723.

The case the Court cited in support of rejecting Defendants' reading does not establish a different rule. (Mem., D.E. 58, at 42.) *Kolender v. Lawson* involved a facial challenge to a *criminal* statute. 461 U.S. 352, 353 (1982). So its analysis is inapplicable. And contrary to the Court's reading, Defendants' Sixth Circuit authorities support their application of *Hoffman*. (*Cf.* Mem., D.E. 58, at 43-44.) In *Green Party of Tennessee v. Hargett*, the Sixth Circuit rejected the argument that a statutory provision was unconstitutionally vague because it could *only* be read to grant an improper official unfettered discretion; rather, reading the provision in context, the court held that it could reasonably interpret the provision more narrowly—in other words, there was a constitutional application. 700 F.3d 816, 825 (6th Cir. 2012); *see also Dade*, 802 F. App'x at 885-86 (similar).

The Court also highlighted a number of factors that it said would support applying a more stringent standard in any case. (*See* Mem., D.E. 58, at 46-49.) But *Papachristou v. City of Jacksonville*, which was a criminal case, did not establish a heightened standard for facial vagueness challenges in civil cases. *See* 405 U.S. 156, 156, 170 (1972)). (*Cf.* Mem., D.E. 58, at 47.) *Smith v. Gogen* did not establish a heightened standard for cases that do not involve an "on-the-spot assessment of the need to keep order." 415 U.S. 566, 581 (1974). (*Cf.* Mem., D.E. 58, at 47-48.) Nor does the fact that less specificity may be demanded of "economic regulation" mean a heightened standard applies in cases outside that context. (*Cf.* Mem., D.E. 48, at 48.) Nor does the applicability of a heightened standard to a law imposing "quasi-criminal" penalties support applying such a standard to a civil scheme. *See Hoffman*, 455 U.S. at 499. (*Cf.* Mem., D.E. 48, at

21

48.)  To the contrary, "the Supreme Court has made clear that there is substantially more room for imprecision in regulations bearing only civil, or employment, consequences, than would be tolerated in a criminal code."  *Dade*, 802 F. App'x at 885.  No more than that is at stake here.

### C.  Plaintiffs' As-Applied Vagueness Challenge Also Fails.

Plaintiffs cannot prevail on their as-applied vagueness challenge without showing the challenged provisions are vague "as applied to [their] particular case[s]."  *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001).  But the factual record presents no evidence that the provisions have been—or will be—applied to Plaintiffs.  Their hypotheticals cannot sustain an as-applied vagueness challenge.

A successful vagueness challenge must show that an enactment either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "authorizes or even encourages arbitrary and discriminatory enforcement."  *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 246 (6th Cir. 2018) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)) (alterations omitted).  When the basis for an as-applied vagueness challenge is the potential for arbitrary enforcement, a challenger must show that the challenged enactment has been enforced against him.  *See United States v. Hamblen*, 239 F. App'x 130, 136 (6th Cir. 2007).  Plaintiffs' as-applied claims fail under both theories.

From the beginning, Plaintiffs have relied on hypothetical situations in which the application of each challenged provision arguably presents a close case.  (*See, e.g.*, Compl., D..E. 1, ¶ 59) (suggesting the term "impartial" in paragraph (b)(2) of the Act provides no guidance for teaching about the Holocaust).  But "the mere fact that close cases can be envisioned" does not "render[] a statute vague."  *United States v. Williams*, 553 U.S. 285, 306 (2008).  Rather, Plaintiff Teachers must establish specific, particularized facts that show no reasonable person could

22

understand whether the challenged provisions would prohibit their conduct. *See Krumrei*, 258 F.3d at 537. They failed to do so at the motion-to-dismiss stage. (*See* Mot. to Dismiss Br., D.E. 42, at 15-17.) And the factual record proves the point: Plaintiffs have nothing but "close cases" that have not materialized.

The post-enactment factual record establishes that the Prohibited Concepts Law has provided fair notice to Plaintiff Teachers. Some Plaintiffs, for example, have continued to teach the content that they alleged would violate the Act, yet have faced no sanctions. *See supra* pgs. 2-6. Although others stopped assigning certain material after the Act took effect, they did so independently and have not experienced complaints or disciplinary actions arising from the Act. *See supra* pgs. 2-6. Thus, contrary to the Complaint's allegations, the facts demonstrate not only that a reasonable person could understand the challenged provisions' scope, but that the Plaintiff Teachers have an accurate understanding of the Act's meaning as applied to them.

Nor can Plaintiff Teachers show the Act is vague as applied by creating the potential for arbitrary enforcement. The undisputed facts make clear that the Act has not been enforced against any Plaintiff. Each Plaintiff Teacher testified that he or she had not been subject to any enforcement of the Act. (Exhibit 1 at No. 20; Exhibit 2 at 15:15-15:18; Exhibit 3 at No. 22; Exhibit 4 at 14:5-14:7; Exhibit 5 at 13:25-14:3; Exhibit 6 at No. 19; Exhibit 7 at 28:15-28:18; Exhibit 8 at No. 19; Exhibit 9 at 14:21-14:23; Exhibit 10 at ¶ 7.). When specifically asked whether anyone had made complaints against them, each of the Plaintiff Teachers testified in the negative. (Exhibit 2 at 16:7-20:7, 60:22-61:3, 63:25-64:8, 74:21-75:11; Exhibit 4 at 65:14-65:16; Exhibit 5 at 50:10-50:13; Exhibit 7 at 28:10-28:14; Exhibit 9 at 14:17-14:20.) And none of the Plaintiff Teachers has even alleged receiving warnings that their instruction was violating the Prohibited Concepts Law. (*See generally* Compl. D.E. 1.) More broadly, the undisputed facts show that not a single

23

teacher in Tennessee has been disciplined for violating the Prohibited Concepts Law. (Exhibit 10 at ¶ 7.) And no teacher has been reported to the Board of Education for violating the Law. (Exhibit 10 at ¶ 6.) Thus, the potential for arbitrary enforcement against Plaintiffs "is simply not before the court and cannot constitute the basis for an as-applied constitutional vagueness challenge." *See Hamblen*, 239 F. App'x at 137.

The Court suggested at the motion-to-dismiss stage that Plaintiffs' as-applied vagueness claims did not require greater specificity because "a challenge to the Act's comprehensive unworkability *is* a challenge limited to the facts of each plaintiff's case." (Mem., D.E. 48, at 45.) But if a party could avoid the requirements of an as-applied vagueness claim by raising a "comprehensive" challenge to an entire law and its implementing regulations, it would perversely make a facial vagueness claim *easier* to win when the concerns about "short circuit[ing] the democratic process" are at their height. *See NetChoice*, 603 U.S. at 723 (citation omitted). That is, when a party challenges not just a single vague provision but seeks to strike down a "duly enacted law[]" in toto. *See id.* That can't be right. Plaintiffs' as-applied claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

24

Respectfully submitted,

**JONATHAN SKRMETTI**
**ATTORNEY GENERAL AND REPORTER**


*/s/ Bradford D. Telfeyan*
Bradford D. Telfeyan (BPR #24744)
Ryan N. Henry (BPR #40028)
Assistant Attorneys General
Office of the Tennessee Attorney General
P. O. Box 20207
Nashville, TN 37202-0207
(615) 741-9598
brad.telfeyan@ag.tn.gov
ryan.henry@ag.tn.gov
*Counsel for Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 7th, 2025, the undersigned filed the foregoing document using the Court's Electronic Court-Filing system, which sent notice of filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| David R. Esquivel (BPR # 021459)<br>Jeremy A. Gunn (BPR # 039803)<br>BASS, BERRY & SIMS PLC<br>150 Third Ave. S., Suite 2800<br>Nashville, TN 37201<br>Tel. 615-742-6200<br>desquivel@bassberry.com<br>jeremy.gunn@bassberry.com<br><br>Carey R. Dunne<br>Kevin Trowel<br>Martha Reiser<br>FREE AND FAIR LITIGATION GROUP, INC.<br>266 W. 37th St., 20th Floor<br>New York, NY 10018<br>646-434-8604<br>carey@freeandfairlitigation.org<br>kevin@freeandfairlitigation.org<br>martha@freeandfairlitigation.org<br><br>Frances E. Bivens<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>212-450-4935<br>frances.bivens@davispolk.com | Counsel for Plaintiffs |
| Richard L. Colbert (BPR # 009397)<br>THOMPSON BURTON, PLLC<br>One Franklin Park<br>6100 Tower Circle, Suite 200<br>Franklin, TN 37067<br>Tel. 615-282-5043<br>rcolbert@thompsonburton.com | Counsel for Tennessee Education Association |

*/s/ Bradford D. Telfeyan*
BRADFORD D. TELFEYAN

26