## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE EDUCATION ASSOCIATION, KATHRYN VAUGHN, ROLAND WILSON, MICHAEL STEIN, REBECCA DICKENSON, and MARY MCINTOSH,** | ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00751** |
| | ) | **Judge Aleta A. Trauger** |
| **LIZZETTE GONZALEZ REYNOLDS, in her official capacity as Commissioner of the Tennessee Department of Education; and, in their official capacities as members of the Tennessee State Board of Education: KRISSI McINTURFF, JORDAN MOLLENHOUR, ROBERT EBY, WARREN WELLS, RYAN HOLT, LILLIAN HARTGROVE, NATE MORROW, LARRY JENSEN, DARRELL COBBINS, and BOB SMITH,** | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Plaintiffs' Motion to Alter or Amend Judgment (Doc. No. 102), filed under Federal Rule of Civil Procedure 59(e), asking the court to vacate the Order granting summary judgment in favor of the defendants and the entry of judgment for the defendants, based on the court's finding that the plaintiffs lack standing to bring their challenge under the Due Process Clause of the Fourteenth Amendment. The defendants oppose the motion (Doc. No. 107), and the plaintiffs have filed a Reply in further support thereof (Doc. No. 108). For the reasons set forth herein, the motion will be denied.

# I. LEGAL STANDARD

Parties may move "to alter or amend a judgment [within] 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). "Under Rule 59, a court may alter the judgment based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 563 (6th Cir. 2022) (quoting *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014)). "Rule 59(e) motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 530 (6th Cir. 2016) (quoting *Wardle v. Lexington–Fayette Urb. Cnty. Gov't*, 45 F. App'x. 505, 511 (6th Cir. 2002) (per curiam)).

District courts have "considerable discretion" over Rule 59 motions. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). "Relief under Rule 59(e) is an extraordinary remedy reserved for exceptional cases." *Adams v. Diamond*, No. 3:18-CV-00976, 2022 WL 982365, at *1 (M.D. Tenn. Mar. 30, 2022) (quoting *Hines v. Comm'r of Soc. Sec.*, 414 F. Supp. 3d 1080, 1081 (S.D. Ohio 2019), aff'd, No. 22-5224, 2023 WL 5596858 (6th Cir. June 1, 2023). And such extraordinary relief is "seldom granted." *Mitchell v. Citizens Bank*, No. 3:10-00569, 2011 WL 247421, at *1 (M.D. Tenn. Jan. 26, 2011) (Haynes, J.) (citation omitted).

# II. PROCEDURAL HISTORY

The plaintiffs—the Tennessee Education Association ("TEA") and five licensed Tennessee public school teachers, three of whom are TEA members—filed this lawsuit on July 25, 2023, stating a single claim under 42 U.S.C. § 1983. (Compl., Doc. No. 1.) They assert that a state law and its implementing regulations (collectively, the "Ban" or "Prohibited Concepts Ban") are unconstitutionally vague, both facially and as applied, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, insofar as they fail to provide fair

notice of what the Ban requires or prohibits and they allow for arbitrary and discriminatory enforcement. (*Id.* ¶ 120.) The defendants are the Commissioner of the Tennessee Department of Education ("TDOE") and the members of the Tennessee State Board of Education ("SBOE"), all sued in their official capacity.

The court issued an Order in May 2024, denying the defendants' Motion to Dismiss, holding at that stage that the Complaint adequately alleged facts that, if true, established the plaintiffs' standing to bring their claim. The court also found that the defendants had not established, as a matter of law, that the plaintiffs' claim failed on the merits. *Tenn. Educ. Ass'n v. Reynolds*, 732 F. Supp. 3d 783 (M.D. Tenn. 2024). In April 2025, however, after the parties had the opportunity to conduct discovery, the court issued a ruling that denied the plaintiffs' Motion for Summary Judgment and granted the defendants', based on the court's finding, at the summary judgment stage, that the plaintiffs lack standing to bring their claims. (Doc. Nos. 99 (Memorandum), 100 (Order).)

More specifically, relying primarily upon *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024), and applying the so-called "*McKay* factors" from *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016), to the plaintiffs' pre-enforcement challenge to the Ban, the court found that the plaintiffs failed to establish injury-in-fact, a necessary component of standing. Under *McKay*, the court found that the plaintiffs did not establish a history of prior enforcement of the Ban against others, that the filing of citizen complaints is not the equivalent of enforcement by defendants, and that the plaintiffs had not shown a real or substantial—as opposed to speculative or theoretical—likelihood that the defendants' actions in response to a citizen complaint would cause the plaintiffs a cognizable injury. (Doc. No. 99 at 21–22.) After assessing the other *McKay*

factors, the court found that the plaintiffs failed to establish that these factors weighed in favor of standing:

> The non-existence of any history of past enforcement (despite the law's having passed nearly four years ago and the filing of numerous complaints at the local level), the lack of warning letters, and the absence of any strong statutory attributes making enforcement particularly easy, considered together, lead the court to conclude that the individual plaintiffs lack standing to challenge the Ban. The plaintiffs simply have not established that the "'surrounding factual circumstances' plausibly suggest a credible fear of enforcement."

(*Id.* at 27  (quoting *Christian Healthcare Ctrs.*, 117 F.4th at 848).)[1]

## III.    THE MOTION TO ALTER OR AMEND

The plaintiffs argue in support of their Motion to Alter or Amend that the court clearly erred as a matter of law in its weighing of the *McKay* factors and, more specifically, in concluding that citizen complaints are distinguishable from enforcement actions—for purposes of assessing whether the plaintiffs had established a history of past enforcement—and in concluding that the citizen enforcement provisions in this case did not strongly favor a finding of standing under the third *McKay* factor, which asks whether the challenged statute has some "attribute" that "makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action." *McKay*, 823 F.3d at 869. (*See* Doc. No. 103 at 2, 5–6.) The plaintiffs argue that citizen complaints are the sole means by which an enforcement action is initiated under the Ban and that the Local Education Agencies ("LEAs") to which citizen complaints are submitted are required—under the Rules promulgated by the TDOE—to investigate citizen complaints. (*See*

---

[1]  The court also noted that it "reache[d] this conclusion uneasily," having already concluded in ruling on the Motion to Dismiss that the statute and regulations at issue are unconstitutionally vague. (Doc. No. 99 at 26–27 (quoting *Tenn. Educ. Ass'n*, 732 F. Supp. 3d at 807).)

*id.* at 6 ("The citizen complaints at issue are not private or informal in nature. They are, by TDOE's own regulatory design, an essential part of the administrative enforcement process.").)

The plaintiffs contend that *Christian Healthcare* supports their position that they would suffer a cognizable injury "immediately upon the filing of a [citizen] complaint." (*Id.* at 10.) They also assert that other Sixth Circuit decisions support their contention that "the complaint process is part of the Ban's enforcement mechanism and confers standing here to challenge the Ban, regardless of whether Plaintiffs have been forced to defend such a complaint at the Department level." (*Id.* at 10 (citing *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019 (6th Cir. 2024); *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019); and *Green Party v. Hargett*, 791 F.3d 684 (6th Cir. 2015)).)

The defendants argue in their Response that the court's initial decision was correct, that the plaintiffs' disagreement with the court's analysis of *Christian Healthcare Centers* does not demonstrate a "clear error of law," and that the plaintiffs have improperly cited additional caselaw that (a) they could have but failed to cite in their original briefing on the summary judgment motions and (b) in any event is inapposite or distinguishable. (Doc. No. 107.)

In their Reply, the plaintiffs reiterate their argument that the citizen complaints permitted under the Ban trigger enforcement, under *Christian Healthcare*, while also arguing that the statutory structure of the Ban at issue here bears no resemblance to the Michigan statutory scheme at issue in *Christian Healthcare*, because here the LEAs are required by the "regulations promulgated and enforced by the Commissioner" to take "specific, non-discretionary action upon receipt of a citizen complaint." (Doc. No. 108 at 3.)

## IV. DISCUSSION

The basis for the plaintiffs' motion is that the court committed a clear error of law in dismissing their claim for lack of standing. They have not presented newly discovered evidence or

an intervening change in controlling law, and they do not argue a need to prevent manifest injustice. In support of their motion, the plaintiffs largely reiterate arguments already made or raise arguments that they could have, but did not, raise in the summary judgment briefing. As set forth above, however, a Rule 59(e) motion is not intended to provide an opportunity to re-argue a case or to raise arguments that could have, but were not, raised before judgment was issued. *Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x at 530.

More to the point, the law in this area is *not clear*. The standards that apply in this situation—when First Amendment rights are not at issue and a citizen complaint does not directly result in a state enforcement action—have not been elucidated by the Supreme Court or the Sixth Circuit. Under controlling precedent, it is not clear that a local investigation into whether a "prohibited concepts" complaint is substantiated qualifies as an administrative enforcement action by the state or is simply a filtering mechanism that determines whether a complaint should proceed to an administrative enforcement action. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625–626, n. 1 (1986) (recognizing "the actual filing of [an] administrative action threatening sanctions" as a "harm sufficient to justify pre-enforcement review"). Likewise, it is not clear that an investigation at the local level gives rise to a "cognizable injury" under *Christian Healthcare Centers*. *See Christian Healthcare Ctrs.*, 117 F.3d at 852 (characterizing "enforcement credibility" as "hing[ing] on the answers to two questions: (1) How likely is anyone to file a complaint against a Plaintiff . . . , and (2) if such a complaint were filed, what is the likelihood that Defendants' actions in response would cause a cognizable injury?"). In short, while the plaintiffs may be correct that the court erred, because the law is not clear, any error was not a clear error of law. Relief under Rule 59(e), therefore, is not warranted.

Finally, on the merits, the fact remains that, as of the date of the summary judgment motions (nearly four years after passage of the Ban), no LEA has found a complaint to be substantiated; no teachers have been found to have affirmatively and intentionally included or promoted any prohibited concept; and the citizen complaint mechanism has not led to disciplinary actions. Only three appeals (by complainants) have made their way to defendant State Board of Education, and none of those appeals was resolved in favor of the citizen complainant. The plaintiffs' complaints of a subjective chill on their expression, standing alone, is not a cognizable injury, nor is their subjective fear of enforcement.[2] They have failed to establish that the "'surrounding factual circumstances' plausibly suggest a credible fear of enforcement." *Christian Healthcare Ctrs.*, 117 F.4th at 848 (quoting *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034 (6th Cir. 2022)).

## V.    CONCLUSION

The plaintiffs' Rule 59 motion (Doc. No. 102) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge

---

[2] To be sure, the plaintiffs' subjective fear of enforcement is entirely reasonable. As the court also noted previously, however, a fear of enforcement may be at the same time both reasonable and speculative. (*See* Doc. No. 99 at 23 n.6 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).)